## LORENZO IRWIN v. ELIZA JANE IRWIN.

1. DIVORCE—*Legislative Power to Confer Jurisdiction on Probate Courts*. The power to regulate matters of divorce is a legislative one, and the conferring of jurisdiction upon probate courts to grant divorces is not a wrongful exercise of the right granted by the Organic Act to the legislature of this territory to pass enactments upon rightful subjects of legislation; and the act of the legislature of this territory, of 1890, giving probate courts jurisdiction to entertain actions of divorce, needed no ratification by congress, and the act of congress subsequently passed approving the territorial legislative enactments granting jurisdiction to probate courts, did not take away the right of the legislature to still further make regulations respecting divorce proceedings, nor the right to repeal its own enactments granting to probate courts jurisdiction in divorce cases. The former conclusion of the court in this case on the question of the general jurisdiction of probate courts to grant divorces approved, but the reason for the holding changed.

2. SAME. The jurisdiction of probate courts to grant divorce under § 4966, of the Statutes of 1890, must be exercised in the mode and manner prescribed in the section granting the jurisdiction. It is, therefore, *held*, that probate courts, under the Statutes of 1890, only had jurisdiction to grant divorces where the petition and affidavit showed that the plaintiff had been a resident of the territory for two years, and of the county for six months next preceding the date of filing of the petition.

*Petition for Rehearing.*

*Geo. P. Uhl*, for petitioner.

*W. W. Williams* and *Robert A. Lowry*, contra.

The opinion of the court was delivered by

BIERER, J.: This case was decided and the judgment of the court below reversed and the cause remanded for new trial, at the June, 1894, term of this court *(Irwin v. Irwin*, 2 Okla. Rep. 180,) and the plaintiff in error has filed his petition for rehearing, which

has been granted upon the question of the jurisdiction of the probate court in the cause.

In the decision in this case, this court held that, by § 4966 of the laws of Oklahoma of 1890, and by the subsequent congressional ratification of this provision of the territorial legislative enactments, jurisdiction to try and determine divorce cases had been conferred upon the probate courts in this territory, and that by the repeal of the same by the legislature of 1893, such power had been taken away from the probate courts, but that the jurisdiction in this case was still vested in the probate court by reason of the saving clause of the repeal statute. Applying the law to the petition of the plaintiff, it was held that the petition stated a cause of action under our statutes with reference to divorce, and within the jurisdiction of the probate court.

The judgment was reversed and a new trial granted because the probate court had rendered its judgment after an adjournment of the term, *sine die.*

The plaintiff in error claims that the probate courts in this territory never had jurisdiction to grant divorces for our statutory causes, and, also, if they did have such jurisdiction, then, it was only a limited and special jurisdiction under the terms of § 4966 of the Statutes of 1890, and that the petition in this case does not contain a necessary statement of the jurisdictional facts, and that there is no affidavit which the statute requires to give the court jurisdiction.

The question as to what was the jurisdiction of the probate court in divorce cases, under the Statutes of 1890, must be determined by an examination of the statutes passed by that session of the legislature with reference to the subject of divorce.

Section 3376, Statutes of 1890, provided:

"Marriage is dissolved only:

"First. By the death of one of the parties; or,

"Second. By the judgment of a court of competent jurisdiction decreeing a divorce to the parties.

"The effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons. The district court in each county or subdivision has such jurisdiction in an action as is provided in civil procedure."

Section 3396, on the same subject matter, provided:

"A divorce must not be granted unless the plaintiff has, in good faith, been a resident of the territory ninety days next preceding the commencement of the action."

Section 4966, pertaining to divorces under the Code of Civil Procedure, provided:

"Divorce may be decreed by the district and probate courts of this territory, on petition filed by any person who, at the time of the filing of such petition, is and shall have been a *bona fide* resident of the territory for the last two years previous to the filing of the same, and a *bona fide* resident of the county at the time of and for at least six months immediately preceding the filing of such petition, which *bona fide* residence shall be duly proven by such petitioner to the satisfaction of the court trying the same, by at least two witnesses who are resident freeholders and householders of the territory, And the plaintiff shall, with his petition, file with the clerk of the court an affidavit subscribed and sworn to by himself, in which he shall state the length of time he has been a resident of the territory, and stating particularly the place, town, city or township in which he has resided for the last two years past, and stating his occupation, which shall be sworn to before the clerk of the court in which said complaint is filed."

These § § 3396 and 4966 are the sections which were repealed by the laws of 1893.

Section 4966 is the only one of the territorial statutes of 1890 which in any way confers jurisdiction in divorce cases upon probate courts; and by the terms of that section it will be seen that the jurisdiction was conferred upon probate courts to grant divorces upon

petition filed, showing that the person asking the same had been a resident of the territory for two years and of the county wherein the action is brought for six months immediately preceding the filing of such petition, and where an affidavit is filed showing this residence to exist, and stating the particular facts relating to such residence.

The petition in this case, which is sworn to, contains only this allegation with reference to residence :

"That the plaintiff is now and has been for more than two years last past a *bona fide* resident of the Territory of Oklahoma, and is now a *bona fide* resident of the county of Payne."

Under this section of the Statute (§ 4966,) it will be seen that the petition is lacking in the necessary allegation of a six months' residence in the county immediately preceding the filing of the same, and that should the petition be treated as an affidavit, it being sworn to, it is deficient in that it fails to state the time, place and circumstances of such residence, as the affidavit should. These are mandatory provisions and must have been shown to the probate court in order to confer upon it jurisdiction to grant a divorce, if its jurisdiction depended upon this section.

In the case of *Estes v. Estes*, 79 Ind. 363, the supreme court of that state, in construing this very section of the statute, said:

"It is claimed by counsel that these very provisions of the statute are mandatory, and we are of the opinion that they are so far imperative as that there should be, in every case, a substantial compliance with their requirements. Manifestly, the legislative intent in the enactment of these provisions was to limit the operation of the statute to *bona fide* residents of the state, and to restrain or prevent the procurement of divorces by non-residents, through fraud or imposition practiced on the courts. Such substantial compliance with the terms of the statute as may be necessary to carry out and accomplish the purpose and intention of

the legislature, the courts should encourage and require."

So it will be seen that if the power of the probate court to grant these divorces depended entirely upon § 4966 the petition was defective, and the affidavit equally so, if not wholly wanting. But it is contended that § 3396, *supra*, gave jurisdiction to grant divorces where the plaintiff had been a resident of the territory for ninety days, and to that extent modified § 4966.

We cannot support this contention. There is nothing in any language given us by the legislature upon which such a construction can be placed. This § 3396 is contained in the same chapter of the Statutes relating to marriage contracts, which specifically confers the jurisdiction to grant divorces, under that chapter upon the district court. There is nothing in the jurisdictional features of that chapter which in any way refers to the jurisdiction of the probate courts. The jurisdiction of the probate courts under the Statutes of 1890, was a definite and specific jurisdiction, and it was to be exercised, under its terms, only when a petition and affidavit were filed alleging certain things.

The probate court did not have jurisdiction except by virtue of the provisions of this statute; and it is a well understood principle of law that where a right is granted which did not exist at common law, and without such statute, and where it is given upon pursuing a certain procedure, the procedure defined is a part of the right, and the right can only be had by following the procedure, and that mode and that alone must be pursued. (*Conrad & Ewinger et al. v. Starr et al.*, 50 Ia. 470; *Cole v. The City of Muscatine*, 14 Ia. 296.)

It is contended that this § 4966 is also a part of the procedure providing for the exercise of the jurisdiction in divorce cases by the district courts, and if the probate court was limited to the exercise of such

jurisdiction in accordance with the specific terms of this section the district court is equally so limited. But that feature of the contention is not now before the court, and it will be time enough to pass upon that question when it is before us.

It is further contended by plaintiff in error that the article on divorce in the civil procedure act of 1890, of which §4966 is a part, grants the right to probate courts to decree a divorce only in cases of voidable marriages.

Section 1 of this article declares that marriages which are prohibited by law on account of consanguinity, affinity, difference of color, or where either party to the marriage contract had a former husband or wife, shall be void without any legal proceedings; and §2 of the same article provides that when either of the parties to a marriage contract is incapable of making such contract by reason of age or understanding, the same shall be declared void on such incompetent party making the application, but that the issue, if any, of such marriage, shall be legitimate,

These are the only sections of this article referring to the legality of the marriage relation, the other sections are all purely provisions of procedure. These two sections do not pretend to state the causes for which divorce may be declared. The grounds of divorce (which are always statutory provisions) are contained under the chapter with reference to marriage contracts. The legislature, when it enacted the provisions with reference to divorce in the civil code, evidently had no thought in mind as to the grounds upon which divorce should be decreed. They were already provided for in a former chapter of the statute; and when the jurisdiction to grant divorces was conferred upon probate courts by §4966 it was evidently intended that such courts should exercise the same when the grounds for the dissolution of the

marriage contract were shown as provided in the chapter on dissolution of marriage contracts. One of those provisions allows divorce on the ground of extreme cruelty, and that being shown in the petition, the probate court in that respect was authorized to act.

It is claimed that the probate court was wholly without jurisdiction in this case because the affidavit provided by statute was not filed with the petition.

As we have seen, this was one of the mandatory provisions of the Indiana code. (*Estes v. Estes, supra.*)

In the case of *Estes v. Estes, supra,* the case was commenced on the 14th day of October, 1879, and the affidavit as to residence, etc., was sworn to on the 27th day of April, 1879, nearly six months before filing the petition. The defendant filed his motion to set aside the summons because the affidavit as to residence was not made in accordance with the provisions of the statute. The plaintiff asked leave pending the motion to file a substituted affidavit, which leave was granted, and on appeal the supreme court, in allowing the substitution, said:

"But we fail to see that any good result would or could be accomplished by giving these statutory provisions the literal or rigid construction which the appellant's counsel insists should be placed upon them."

With this construction placed upon this statute, which we think we should follow, we can see no reason why the probate court was entirely without jurisdiction, and why leave to amend should not be given. If the plaintiff might amend an affidavit sworn to almost six months before filing the petition, and which therefore could in no way declare the plaintiff's residence during such period of nearly six months, and which by the terms of the Indiana statute must be shown to have been in the county in which the action was brought, why might not an affidavit and a petition

which showed two years' residence in the territory and a residence then in the county, but entirely failed to state how long it had been in the county, be amended by inserting proper allegations, if the facts warranted the same? We can see no reason why the rule of amendments should not be equally applicable in one case as in the other. The petition was sworn to and was evidently intended by the plaintiff and so understood by the probate court to be used both as a petition and as an affidavit. The petition under the Indiana code and under our code of 1890 was not required to be sworn to. Being sworn to, therefore, and the verification being by the court accepted as the statutory affidavit, it would be at least sufficient as a basis for proper amendment.

Under the Kansas code an application for a temporary injunction must be supported by affidavit, and in the case of *Atchison v. Bartholow*, 4 Kan. 124, it was held (p. 139):

"The affidavit of the plaintiff to the necessary facts, will, under this provision, be sufficient, and the petition may be used as an affidavit."

Under the Indiana code, also, there was provision for an attachment being had upon affidavit stating the statutory grounds therefor, and under such code it has been held that the grounds of attachment may be set out and sworn to in the petition, and the same used as a statutory affidavit. (*Dunn v. Crocker*, 22 Ind. 324.) It is, therefore, our opinion that the probate court had jurisdiction of the action with the sworn petition filed, but when the motion of plaintiff in error was made to dismiss the action in the court below because the court had no jurisdiction, the court should either have required the plaintiff to have amended his petition and affidavit so as to conform strictly to the statute or should have sustained the motion. The court having failed to do its duty in this respect does

not render its proceedings void; but the defendant in error should still have an opportunity to comply with the statute.

We desire now to more correctly state the views of this court upon the question of the jurisdiction of probate courts in divorce cases. We still adhere to the conclusion of the court in the former opinion in this case that probate courts, since the act of the legislature which took effect August 14, 1893, repealing the statute of this territory giving such courts jurisdiction in divorce cases, have no jurisdiction to entertain such proceedings; but are not satisfied with the reasons given in our former opinion for such conclusion. The former opinion in this case upon this question is based upon the theory that the probate courts of this territory have had no jurisdiction in divorce cases, except by the congressional ratification of our legislative enactments, and that this necessary congressional ratification being of, and concerning, an act of the legislature, this action of congress did not take away from the legislature the right to repeal its own enactment giving to the probate courts this important jurisdiction. The majority of this court do not believe this position sound. If the conclusion is once reached that the probate courts could not have exercised this jurisdiction, excepting by act of congress by ratificatory enactment, then we are free to say that our conclusions as to the present jurisdiction of probate courts might be different, but we do not believe that it was necessary for congress to ratify this act of the legislature giving probate courts jurisdiction in such cases. We believe that the question of marriage and divorce, of the marriage relation and the dissolution thereof, is entirely a legislative question and one which should and must be controlled by legislative enactment. Except for the act of congress prohibiting local and special legislative acts, the legislature

might either grant divorces itself or it might confer upon some other body, not necessarily a judicial tribunal, the power to grant the same. The right to grant divorces never was inherent in either courts of chancery or common law, and the inherent powers of the district and supreme courts of this territory are those possessed by chancery and common law courts under the grant of the Organic Act, which is:

"And said supreme court and district courts, respectively, shall possess chancery as well as common law jurisdiction."

So long, then, as an act of the legislature does not infringe on any of the common law or equity jurisdiction of the courts of the territory, as defined by act of congress, and the act is within the grant of legislative power extended to the legislature of this territory, we can see no reason why it is not valid. We know of no reason why it cannot, on the one hand, enact, and no reason why it cannot repeal the same. The act of congress ratifying this law, giving jurisdiction to the probate courts, does not prevent the legislature from repealing the same. There is nothing in the act of congress making the ratification, which indicates that congress meant to repeal any of the provisions of our Organic Act. Congress had delegated to the territorial legislature the power to legislate upon "all rightful subjects of legislation not inconsistent with the constitution or laws of the United States," and not prohibited by the other terms of the Organic Act, and there is no provision against its legislating, by general enactment, on the question of divorce. The same legislature of 1890 passed various enactments relating to probate courts. It passed an act giving to probate courts the jurisdiction of justices of the peace; also, the jurisdiction to try and determine causes, when the same were for the recovery of money or personal property, and the amount or value thereof did not exceed

the sum of one thousand dollars, co-ordinate with the district court. It also enacted a chapter of seventy-three pages, defining the jurisdiction and procedure of probate courts with reference to the estates of decedents, and the appointment of guardians for, and the control of, the estates of insane and otherwise incompetent persons. It also granted such courts the power to take testimony in certain instances in land contest cases. Will it be contended that the legislature might not repeal the provisions of such of these enactments as were valid without any ratifying act of congress? Did the legislature lose its right to repeal or amend the extensive chapter defining the jurisdiction and procedure of the probate courts in the matter of the estates of deceased persons and the guardianship of minors and of the insane, merely because the general ratification of these laws relating to probate courts also included this chapter? Did congress, in the ratifying act, mean to give life and validity to those of these acts which were void without such ratification, and, also, to take away the power of the legislature to repeal such valid enactments as were valid without congressional ratification? We think not. If the power of the legislature to withdraw from probate courts the jurisdiction conferred in divorce cases, did not exist because of the congressional ratification, then it is equally true that the power did not exist to repeal these other laws which had been passed within the rightful grant of legislative power, but which had been ratified by act of congress. We think the ratifying act of congress was only intended to give life and validity to such acts as would not be valid without congressional ratification, and did not intend, in addition thereto, to in any way effect the acts of the territorial legislature relating to probate courts which it might have passed without authority of congress. It did not mean to take away any of the power granted

by the Organic Act, to legislate upon "all rightful subjects of legislation."

This act of congress was a grant of validity to and not a restraint upon the power and exercise of power by the legislature, and the words used being words of approval and not of restraint, and there being several enactments to which it might by its general terms have applied, part of them requiring an act of congress to give life to the same because of the legislative inability to enact such provisions without such ratification, and part of them requiring an act of congress to make them valid, it cannot be presumed or held that such words of approval could have been meant to apply to any other of the legislative provisions than those which required ratification, and cannot be construed to limit a broad congressional grant of legislative power which had been in no way exceeded. If the legislature had a right to legislate with reference to the granting of divorce before this approving act of congress, it still possessed it afterwards, and if it had a right to grant to the probate courts power to grant divorces for statutory causes, it still possessed the right after this congressional enactment to take it away, and having by its own provisions taken away the power prior to that granted by it to the probate courts, of course the probate courts do not now possess the power conferred upon them to grant divorces.

The latter part of art. 16, ch. 19, of the Laws of 1890, which is the article extending to probate courts the power to hear and determine actions for the recovery of money or personal property where the value thereof does not exceed the sum of one thousand dollars, in the same manner and under the same procedure as provided for the justice and district courts, by its very provisions recognizes the fact that it could not be enforced until ratified by act of congress, for it

says: "This act shall be in force and take effect from and after its adoption and legalization by act of congress," and it is but fair to presume that the attention of congress, as exhibited by the act of ratification in question, was called to Oklahoma affairs by this expression of the Oklahoma legislature, and it wished to give effect to its enactments rather than to circumscribe any of its powers.

The placing of the divorce laws of Nebraska in force in this territory was not a perpetual grant of jurisdiction to the district courts of this territory to grant divorces, for this very act of congress provided that this very divorce law and the other laws referred to in the same section "are hereby extended to and put in force iu the Territory of Oklahoma until after the adjournment of the first session of the legislature of said territory." The divorce law of Nebraska was not only not put in force as a permanent enactment but this very congressional action recognizes the principle that divorces are a proper subject of the exercise of legislative power; otherwise congress would certainly have made not a temporary but a permanent statute on this subject.

The power given by § 11, of the Organic Act, by which the Nebraska statutes were put in force iu this territory, to the courts of this territory, to enforce such laws has already been held by this court to exist only so long as the Nebraska statutes existed in this territory and not to mean that such enactments or such jurisdiction as given by the Nebraska statutes were to be permanent in their enforcement. (*Collar v. Territory*, 2 Okla. Rep. 444.)

Our conclusion that the regulation and granting of divorce are rightful subjects of legislation is amply supported by authority. The subject is very ably considered and reviewed in the supreme court of Utah by Emerson, J., in the case of *Whitmore v. Harden*, 3

Utah, 121, (1 Pac. 465) where the former opinion of that court in the case of *Kenyon v. Kenyon*, 24 Pac. 829, not officially reported, was approved, and the case of *Cast v. Cast*, 1 Utah, 112, overruled, and where the court held that an act of the legislature which granted to probate courts in that territory power to hear and determine causes for divorce was valid.

In the case of *Maynard v. Hill*, 125 U. S. 190, the supreme court of the United states had occasion to consider this question, and in a very able opinion, by Mr. Justice Field, it appears that on December 22, 1852, the legislature of the Territory of Oregon, under a grant of legislative power identical in substance with that granted by congress to the legislature of this territory, granted a divorce to D. S. Maynard from Lydia A. Maynard, his wife, and this act of the legislature was held valid and as being only a proper exercise of the grant of power given to the legislature to legislate upon "all rightful subjects of legislation."

In the opinion, the learned judge says:

"When this country was settled, the power to grant a divorce from the bonds of matrimony was exercised by the parliament of England. The ecclesiastical courts of that country were limited to the granting of divorces from bed and board. Naturally the legislative assemblies of the colonies followed the example of parliament and treated the subject as one within their province. And until a recent period legislative divorces have been granted, with few exceptions, in all the states. Says Bishop in his treatise on Marriage and Divorce : 'The fact that at the time of the settlement of this country legislative divorces were common, competent and valid in England, whence our jurisprudence was derived, makes them conclusively so here, except where an invalidity is directly or indirectly created by a written constitution binding the legislative power.' (§ 664.)

"Says Cooley, in his treatise on Constitutional Limitation: 'The granting of divorces from the bonds of matrimony was not confided to the courts of Eng-

land, and from the earliest days, the colonial and state legislatures in this country have assumed to possess the same power over the subject which was possessed by the parliament, and from time to time they have passed special laws declaring a dissolution of the bonds of matrimony in special cases.' (p. 110.)

"Says Kent in his Commentaries: ' During the period of our colonial government, for more than one hundred years preceeding the Revolution, no divorce took place in the colony of New York, and for many years after New York became an independent state, there was not any lawful mode of dissolving a marriage in the lifetime of the parties but by a special act of the legislature.'" (2 Kent. Com. 97.)

The learned judge then proceeds in the opinion to review the decisions of the supreme courts of the states of Pennsylvania, Maryland and Connecticut supporting the holdings of the court, and also the decisions of the supreme court of Massachusetts expressing contrary views, and then says :

"The weight of authority, however, is decidedly in favor of the position that in the absence of direct prohibition, the power over divorce remains with the legislature. We are, therefore, justified in holding — more, we are compelled to hold, that the granting of divorces was a rightful subject of legislation, according to the prevailing judicial opinion of the country, and the understanding of the profession, at the time the organic act of Oregon was passed by congress, when either of the parties divorced was at the time a resident within the territorial jurisdiction of the legislature."

These decisions by Justice Field and by Justice Emerson are so full, complete and exhaustive as to leave but little more to be said, and no room for argu-. ment, on this question, and the views therein expressed meet our entire approval.

Upon the general proposition that the power to grant divorces does not pertain to either a court of law or of equity without a statute giving power to

such courts, we cite the case of *Hopkins v. Hopkins*, 39 Wis. 167, which was decided before and not referred to in either of the above cases. In this case the court said:

"It is a general principle of the law of divorce of this country, that the courts, either of law or equity, possess no powers except such as are conferred by statute; and therefore authority for the action of the court in that class of cases must be found in the statute, and cannot be looked for elsewhere."

The decision of the case of *Ferris v. Higley*, 20 Wall. 375, is not opposed to the view of the question as taken in *Whitmore v. Hardin* or *Maynard v. Hill*. In this case the supreme court of the United States held that an act of the legislature of the Territory of Utah, which granted original jurisdiction to the probate courts both in civil and criminal actions and as well in chancery as at common law, was in violation of the delegation of legislative authority given to the legislature of the Territory of Utah, and was an infringement upon the power expressly given by the organic act to the district and supreme courts of Utah, and was therefore void. In the case the court said:

"The common law and chancery jurisdiction here conferred on the district and supreme courts, is a jurisdiction very ample and very well understood. It includes almost every matter, whether of civil or criminal cognizance, which can be litigated in a court of justice."

The learned judge then proceeds to trace in a brief but comprehensive manner the history of probate courts and the usual scope of their authority, and concludes:

"They were not in England considered originally as courts of record; and have never, in either that country or this, been made courts of general jurisdiction, unless the attempt to do so in this case be successful."

But the court nowhere in that case holds that the legis-

lature had not the right to impose upon probate courts additional duties, burdens and jurisdictions which did not infringe in any way upon the grant of judicial authority given to the other courts of the territory. On the contrary, it is expressly stated:

"There may be cases when that legislature conferring new rights, or new remedies, or establishing anomalous rules of proceedings within their legislative power, may direct in what court they shall be had. Nor are we called upon to deny that the functions and powers of the probate courts may be more specifically defined by Territorial Statutes within the limit of the general idea of the nature of probate courts. or that certain duties not strictly of that character may be imposed on them by that legislation."

This language or holding is in no way disapproved of in the subsequent case of *Maynard v. Hill*, in fact in this latter case it is not even referred to as being opposed to the position there taken.

The supreme court of Utah when passing upon this question evidently had this case of *Ferris v. Higley* before it when considering this subject, for the opinion in *Whitmore v. Harden* says:

"It was within the legislative power of the territorial legislature, not only to declare what should be grounds for a divorce, but to name the probate courts as the proper courts in which proceedings should be taken to procure one. The right of these to exercise this jurisdiction is not denied by either the language or reasoning of *Ferris v. Higley*, 20 Wall. 375."

Congress as late as July 30, 1886, by an act of that date contained in Vol. 1 of the supplement to the Revised Statutes of the United States, p. 503, expressly recognizes this doctrine, that the granting of divorces is a rightful subject of legislation for territorial legislatures, for an act of congress that day passed recognizes not only the fact that territorial legislatures possessed the right to grant divorces but that they

possessed it to an extent of its most vicious exercise, that is, to grant divorces in individual cases, to grant them by a local, special or individual act, such as had been done in the Maynard case.

The first part of the first section of this act provides:

"That the legislatures of the territories of the United States, now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases, that is to say, granting divorces." * * *

This is a statutory prohibition that congress would undoubtedly not have passed without a clear understanding that the legislatures of the territories did possess the power to grant divorces, and did that only to prohibit the legislature from granting them by local and special enactment, leaving still reposed in the legislature the right to grant them by an act not prohibited by this statute, that is, by a general and uniform law.

It is worthy of note that the case of *Maynard v. Hill* was decided by the supreme court in March, 1888, less than two years after this act of congress referred to was passed, and that this legislative construction by the supreme law-making power of the land was expressly approved by the supreme judicial tribunal of the country within two years after it was made.

This case was decided and the judgment, which the supreme court affirmed, was filed in the supreme court of Washington Territory, at the July term, 1894, (see 5 Pac. Rep. 717), and was no doubt pending in the supreme court of the United States when this act of congress of July 30, 1886, was passed, and it would not, therefore, be resorting to imagination to infer that congressional attention was called to the matter by this very case, in which such an unnatural advantage had been taken of the absent wife by the husband.

The position taken by a majority of this court is that, under the acts of the legislature of this territory, of 1890, the probate courts had jurisdiction to grant divorces by proceedings had under § 4966, of the Statutes of Oklahoma, of 1890, but that subsequent to August 14, 1893, such jurisdiction has not existed, because this jurisdiction, so given to the probate courts, was repealed by the provisions of the civil code which took effect that day. The decision of the court heretofore rendered is, therefore, modified in accordance with these views, and the cause remanded, with directions to the court below to sustain the motion of the defendant to dismiss the action, unless proper amendments are made to the petition and the affidavit within a reasonable time. The other questions raised against the validity of the orders of the court below, it is not necessary for us now to examine, as our holding is a reversal of all of the final determinations made in the action in the court below.

Justices Burford and McAtee concurring.

Dale, C. J.: I agree with the conclusions arrived at in this opinion, but do not agree with the reasons stated for them, but adhere to the decision heretofore rendered by this court in *Irwin v. Irwin*, 2 Okla. Rep. 180.

Scott, J., dissenting.