## REYNOLDS v. BROCK et al.

No. 14006—Opinion Filed Jan. 5, 1926.

Rehearing Denied Dec. 14, 1926.

(Syllabus.)

1. **Constitutional Law—Legislature Powerless to Validate Probate Sale Based on Void Judgment.**

The Legislature has no power to validate a judgment of the county court exercising probate jurisdiction, in directing a sale of real estate, if the judgment was void for want of jurisdiction at the time of its entry.

2. **Same—Statute Purporting to Validate Orders Transferring Probate Causes to Another Court—Lack of Jurisdiction in Sale of Minor's Real Estate.**

The act of May 17, 1913, the same being chapter 208, Session Laws 1913, purporting to validate orders where probate causes had been transferred from one county to another at a time when there was no statutory provision authorizing same, was ineffective to render valid orders authorizing and confirming a sale of real estate of a minor, the court not having jurisdiction to make the orders at the time of their entry.

Error from District Court, Rogers County; Chas. W. Mason, Judge.

Action by Mary M. Reynolds, neé Brock, against Hugh Brock and others. Judgment for defendants, and plaintiff brings error. Reversed.

West & Petry, for plaintiff in error.

Holtzendorff & Holtzendorff, for defendants in error.

BRANSON, V. C. J. The plaintiff in error herein is Mary M. Reynolds. She was the plaintiff in the cause below, and was and is a citizen by blood of the Cherokee Nation, being enrolled as Mary M. Brock, her maiden name. Plaintiff's father was one Hugh Brock, who is named as one of the defendants in this action. In December, 1908, plaintiff was a minor and a good faith resident of Mayes county, living at the home of her said father. In said last named month, Hugh Brock filed a petition in the county court of Mayes county for the appointment of himself as guardian of the said plaintiff and others of his minor children. He was duly and regularly appointed as such guardian. The plaintiff, at that time, by reason of her citizenship in the Cherokee Nation, and as her allotted share of the lands of said Indian Tribe, was the owner of a certain tract of land which was by the said guardian offered for sale through the county court of Mayes county. No question is here involved as to the validity of the sale of the said allotment of the plaintiff. From said sale, the plaintiff's share of the money derived was approximately $3,000. This money, without sanction of the court, was invested in real estate located in Rogers county, Okla., the description of which we deem it unnecessary to give. The numerous defendants mentioned in this action were, at various times, through mesne conveyances, interested in said real estate. On purchasing the same, conveyance was taken in the name of Hugh Brock, guardian, etc. This guardianship cause was continued in the said county of Mayes until the 29th day of June, 1909, when, on petition of Hugh Brock, the guardian an order was entered in the county court of Mayes county which on its face purported to transfer said probate proceeding to the county court of Rogers county, and recited "That all papers, vouchers and orders now on file in this court be transferred to the said county court of Rogers county at Claremore, Oklahoma." The petition on which this order was made, recited that the residence of the guardian of the minors had, since the appointment, been changed to Rogers county. No petition for appointment of guardian was ever filed in the county court of Rogers county, but it appears that the said last-named court undertook to assume jurisdiction "on the papers, files, orders and documents" of the county court of Mayes county being received by it and made a matter of record in said last-named county court. It further appears that the said guardian, in June, 1910, filed his petition in the county court of Rogers county for an order authorizing him, as such guardian, to sell the land of the plaintiff. That an order was duly entered by the county court of Rogers county, the land was sold, and return duly made to the county court, where, on the 29th of August, 1910, an order was entered confirming the sale.

The controlling question arising in this case is whether, under this state of facts, the plaintiff, by said last-named proceeding, was divested of her interest in the property purchased in Rogers county with the moneys arising from the sale of her allotment through the guardianship proceeding in Mayes county.

The county court of Mayes county had jurisdiction to make the appointment in the first place. Its jurisdiction thereafter continued, unless it lost jurisdiction in some manner provided by law. It is not suggested by either of the parties that the probate proceeding in Mayes county was terminated in any method provided by statute. It is not suggested by either party that there was any statute even purporting to authorize the county court of Mayes county to divest itself of jurisdiction by such a pretended transfer, neither is any statute cited which would authorize the probate court of Rogers county to acquire jurisdiction by taking charge of the papers, orders, and vouchers sent over from Mayes county. The defendants rely upon the act of the Oklahoma Legislature approved May 17, 1913, which is section 6198a, Bunn's 1918 Supp. to R. L. 1910, and reads as follows, to wit:

"All transfers of records, suits or proceedings of a probate nature which have been attempted to be made whereby a transfer of such records, suits or proceedings has been ordered from the county where the guardianship or proceedings was instituted or is pending, to the county of the domicile of the minor, or ward, where such domicile has been changed from the county where guardianship proceeding was instituted or is pending, to the county to which the transfer is ordered made, even though the original appointment in the court where such matter was instituted or is pending, has been made since statehood, and where such transfer has been ordered prior to the passage and approval of the act of the Oklahoma Legislature approved February 26, 1910, and found in the Session Laws of Oklahoma, 1910, pages 37 and 38, be, and the same are hereby legalized, and no sale or other proceedings by the court to which such suit, matter or proceeding has been ordered transferred, shall be void because of such transfer."

The real question herein is whether or

not this act was effective to do what it purported on its face to do, to wit, to make "no sale or other proceeding by the court to which such suit matter or proceeding has been ordered, transferred, shall be void because of such transfer."

This takes us into the authorities on the question of the nature of a probate sale. That it is a judicial proceeding we think is not subject to question. And the order confirming sale is a judicial act. In re Standwaitie's Estate, 73 Okla. 255, 175 Pac. 542; Morrison v. Burnett, 154 Fed. 617; Smith v. Rockett, 79 Okla. 244, 192 Pac. 691.

In the case of Crosbie v. Brewer, 68 Okla. 16, 158 Pac. 388, 173 Pac. 441, this court announced this rule of law, speaking on the jurisdiction of county courts in probate matters:

"When one court has acquired jurisdiction, no other court of concurrent jurisdiction will interfere or attempt to assume jurisdiction of the same matter. * * * It is fundamental that a court which first acquires jurisdiction of the parties and subject-matter will retain it until divested of it by some court of appellate powers, or the cause is regularly transferred **in some way provided by statute.** Any other procedure would lead to inextricable confusion and conflict."

It seems clear to us that the county court of Rogers county in 1910 had not acquired jurisdiction of this probate proceeding in any method or manner either expressly or impliedly authorized by either the Constitution or statutes of this state. Under this condition, could the said act of the Legislature of 1913 make valid the judicial acts of the said county court, when they were void for want of jurisdiction at the time they were made? Our investigation leads us to the conclusion that such power does not exist in the legislative branch of the state government. This for the reason that the validity of a judgment must depend upon the jurisdiction of the court at the time it is rendered, and not upon jurisdiction which the Legislature may subsequently attempt to confer. Pennoyer v. Neff (U. S.) 24 L. Ed. 565; Lamont v. Vinger (Mont.) 202 Pac. 769. Remedial statutes as that above quoted generally cure those defects which do not concern jurisdictional matters, and it is usually held that they cannot constitutionally operate to give effect to a sale which is void for want of jurisdiction. 25 C. J. 694.

In the case of Pryor v. Downey, 50 Cal. 389, it is said:

"An act of the Legislature undertaking to validate a judgment of a court, void for want of jurisdiction, is an attempted exercise of judicial power by the Legislature. Such an act also contravenes the provision of the Constitution, 'No person can be deprived of his property without due process of law.'

"The jurisdiction to inquire into the existence of the debts of an estate may be and has been placed in the probate court and the statute of April 2, 1866, ratifying sales of real estate made by the probate court, where there are defects or errors—if it has any effect—validates judgments which are otherwise void, and it is unconstitutional.

"The Legislature has no power to validate a judgment of a probate court directing a sale of real estate, or to validate the sale made by an administrator or executor under such judgment, if the judgment was void for want of jurisdiction to render it."

In the case of Hall v. Perry (Mich.) 40 N. W. 324, it is said:

"It is true that a retrospective statute curing defects in legal proceedings, where they are in their nature irregularities only, and do not extend to matters of jurisdiction, is not void on constitutional grounds, unless expressly forbidden; but the proposition that the Legislature can make good that which was void when done is utterly at variance with the fundamental principles of the law."

In the case of People v. Wisconsin Co. (Ill.) 76 N. E. 80, the court said:

"But while curative acts may heal irregularities, they cannot cure the want of authority to act at all."

To the same effect in reasoning are these: McDaniel v. Correll, 19 Ill. 226; Willis v. Hodson (Md.) 29 Atl. 604; Maxwell v. Goetschius, 40 N. J. Law, 383; Griffin v. Cunningham, 20 Grat. 31 (Va.); Northern Pacific v. Galvin, 85 Fed. 811; Martin v. Hewitt, 44 Ala. 418; Richards v. Rote, 68 Pa. 248; Nelson v. Rountree, 23 Wis. 368.

The effect of the act of the Legislature above quoted would be to divest the plaintiff of her property, through and by reason of legislative enactment. and this, we think, can be done only by due process of law. Section 7, art. 2, Williams' Ann. Oklahoma Constitution.

Reaching the conclusion that the county court of Rogers county had no jurisdiction at the time it purported to enter the orders authorizing and confirming the sale of the land involved, and that the act of the Legislature could not validate such orders, we are not concerned with the contention made by the defendants that the proceeding herein is a collateral attack upon the judgment of the court.

The judgment of the trial court is therefore reversed for such other proceedings not inconsistent herewith.

NICHOLSON, C. J., and PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur. HARRISON, J., absent and not participating. MASON, J., disqualified.

Note.—See 12 C. J. p. 830, §307.