**William C. NANTZ, Appellant,**

v.

**Patricia Ann NANTZ, Appellee.**

**No. 62029.**

Supreme Court of Oklahoma.

Feb. 2, 1988.

As Corrected Feb. 3, 1988.

Dan R. Brown, Lawton, for appellant.

John N. Fleur, Nicklas, Saenz & Lile, Inc., Lawton, for appellee.

ALMA WILSON, Justice:

We are called on again to address the subject of support alimony where the alimony recipient is cohabitating with a member of the opposite sex. The issue again addressed is the retroactivity of 12 O.S. 1981, § 1289, and its subsequent amendments.

The parties to this appeal were granted a decree of divorce by the District Court of Comanche County on January 10, 1979. It provided, in addition to property division and child support payments, that the appellant pay the appellee support alimony in the amount of $300 per month from December 1, 1978, through June 1, 1993. Support alimony was subject to termination by the death or remarriage of the appellee.

On February 15, 1984, the appellant filed a motion to modify the support payments in Comanche County District Court. Appellant's motion was grounded on the allegation that the appellee was cohabiting with a member of the opposite sex and that modification or termination of support was therefore justified under 12 O.S. § 1289(D).[1]

---

1. The 1983 amendment was in effect at the time the motion to modify was filed. *See,* 1983 Okla. Sess. Laws, ch. 86, § 1.

Appellant's motion was denied by the district court on March 12, 1984. The trial court ruled that to sustain the motion would give retrospective effect to the statute, which became effective October 1, 1979, over nine months after the divorce had been granted.

Section 1289(D) makes voluntary cohabitation of a former spouse with a member of the opposite sex grounds for the modification or termination of future support payments where the moving party proves a substantial change of circumstances of either party to the divorce relating to need for support or ability to support.[2]

Whether § 1289(D) should be retrospectively applied was addressed in *Smith v. Smith*, 652 P.2d 297 (Okl.1982). In the *Smith* case, the parties were granted a decree of divorce on February 15, 1979. After subsection D became effective, October 1, 1979, Mr. Smith filed a motion to modify his payments of support alimony on the ground that Mrs. Smith was cohabiting with a member of the opposite sex. The opinion held that 12 O.S.1981, § 1289(D) could have prospective application only because there was no language in the statute to indicate that the legislature intended to give retrospective effect to it.

After the *Smith* case was published in 1982, the legislature amended § 1289, adding subsection E:

Except as otherwise provided in subsection D of this section, the provisions of any divorce decree pertaining to the pay-

ment of support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable to either party. Only those installments accruing subsequent to the motion for modification may be modified.[3]

That subsection provides that *any* divorce decree may be modified. The movant need only prove changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable. Proof sufficient for relief under subsection D is similar, requiring "substantial change of circumstances of either party to the divorce relating to need for support or ability to support." In spite of the language that "any" divorce decree may be modified, this Court held in *Holdsworth v. Holdsworth*, 720 P.2d 326 (Okl.1986), that the 1983 amendment did not apply retroactively to alimony provisions of a decree of divorce imposed prior to the effective date of the statute, November 1, 1983. *Holdsworth* concerned the reduction of support alimony due to a change in the movant's financial situation.

Even before *Holdsworth* was published, the legislature in an apparent attempt to further clarify this statute, amended subsection E, stating that "The provisions of this subsection shall have retrospective and prospective application with regards to modifications for the purpose of obtaining

---

2. Subsection D of 12 O.S., § 1289 was added, and became effective on October 1, 1979, 1979 Okla. Sess. Laws, ch. 278, § 1, and has been amended three times since then. *See,* 1983 Okla. Sess. Laws, ch. 86, § 1; 1985 Okla. Sess. Laws, ch. 188, § 1; and 1987 Okla. Sess. Laws, ch. 130, § 1, effective June 3, 1987. The statute provides:

The voluntary cohabitation of a former spouse with a member of the opposite sex shall be a ground to modify provisions of a final judgment or order for alimony as support. If voluntary cohabitation is alleged in a motion to modify the payment of support, the court shall have jurisdiction to reduce or terminate future support payments upon proof of substantial change of circumstances of ei-

ther party to the divorce relating to need for support or ability to support. As used in this subsection, the term cohabitation means the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship not solemnized as a marriage according to law, or not necessarily meeting all the standards of a common-law marriage. The petitioner shall make application for modification and shall follow notification procedures used in other divorce decree modification actions. The court that entered the divorce decree shall have jurisdiction over the modification application.

3. 1983 Okla.Sess.Laws, ch. 86, § 1, effective Nov. 1, 1983.

support...." [4] In a further attempt to clarify the statute, the legislature has recently enacted yet another amendment to § 1289 in House Bill 1286.[5] The new amendment in subsection G provides:

> The provisions of subsections D and E of this section shall have retrospective and prospective application with regards to modifications of the provisions of a final judgment or order for alimony as support, or of a divorce decree pertaining to the payment of alimony as support, regardless of the date that the order, judgment, or decree was entered. The imperative language of the latest legislative amendment precludes an interpretation that would provide for prospective application only. The language of the amendments is progressively stronger and supports the conclusion that the legislature intended that trial courts have the power to modify support alimony payments regardless of the date that the divorce decree was entered.

■ Having made such a finding, we must decide whether the legislature has the power to retrospectively apply the statute. One method of examination is to determine whether the right to support alimony is vested. This approach has been the traditional method of determining whether a right is protected from invasion of the legislature under Article 2, §§ 7, 15 of the Constitution of Oklahoma. If the right is vested, the authorities are both clear and strong that it cannot be destroyed or impaired except by due process of law. *Baker v. Tulsa Building & Loan Ass'n*, 179 Okl. 432, 66 P.2d 45, 48 (Okl.1937). The *Baker* Court held that a right was vested when the right of enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. *Baker*, 66 P.2d at 48.

An analysis of the statute under this approach would dictate that we determine whether support alimony is terminable or modifiable, and if so, we could conclude that the right is not vested because it would not be a present interest. This Court has held that death of either party will terminate alimony support payments absent agreement to the contrary. *May v. May*, 596 P.2d 536 (Okl.1979). Under § 1289, an award of support alimony is now terminable upon death, remarriage, or cohabitation with a member of the opposite sex. Like child support, under § 1289, it is now modifiable. Since support alimony is terminable and modifiable, then the right is not vested at the time of the decree, but only at the time each payment becomes due.[6]

The approach of determining that a right is not vested, and concluding therefore that no due process rights have been violated has been criticized.[7] Describing a right as "vested" is merely conclusional, as the courts must decide what constitutes such a right.[8] In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) the Supreme Court of the United States examined the constitutionality of the Black Lung Benefits Act of 1972 because of its retrospective effect

---

**4.** 1985 Okla.Sess.Laws, ch. 188, § 1, effective Nov. 1, 1985.

**5.** 1987 Okla.Sess.Laws, ch. 130, § 1.

**6.** The case cited by the dissent in footnote 6, *Stanfield v. Stanfield*, 67 Okl. 56, 168 P. 912, 914 (1917), supports the proposition that support alimony is terminable, and therefore is not vested. *Stanfield* holds:

> Alimony decreed to a wife in a divorce is as much a debt, *until the decree is recalled or modified*, as any judgment for money is, and there is authority to the effect that the decree in favor of Mrs. Stanfield operated to cause an indebtedness to arise in her favor *as each installment of alimony fell due*. [Emphasis added, citation omitted.]

There is, in fact, support in our case law for the proposition that support alimony stands in a class by itself. The case of *Grattan v. Tillman*, 323 P.2d 982, 984 (Okla.1957) quotes *Commons v. Bragg*, 183 Okl. 122, 80 P.2d 287, 290 (1938) as follows:

> [A]n order for the payment of alimony possesses different characteristics from an ordinary debt since it is designed to secure the performance of a legal duty in which the public has an interest.

**7.** DeMars, *Retrospectivity and Retroactivity of Civil Legislation Reconsidered*, Ohio N.U.L.Rev. 253 (1983).

**8.** 16A Am.Jur.2d *Constitutional Law* § 669 (1979).

upon coal mine operators, who attacked the Act on several grounds including that the Act violated the Fifth Amendment Due Process Clause. The Court upheld the constitutionality of the Act stating that legislation which readjusts rights and burdens is not unlawful solely because it upsets otherwise settled expectations. The test the Court used was whether the measure enacted by Congress approached the problem of cost spreading rationally. The majority opinion refused to decide whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances, deferring to Congress on that matter.

The legislature generally may overcome the traditional bias against retrospective statutes as long as it rationally relates the legislation to a legitimate governmental purpose, and if that rational relationship is present, the law may be upheld even though it may impair recognizable property rights.[9] As in *Usery*, the legislation before this Court is an attempt by the legislature to readjust the rights and burdens of the divorced parties in the area of support alimony. The regulation of marriage and divorce is entirely a legislative question, and one which should and must be controlled by legislative question, and one which should and must be controlled by legislative enactment. *Irwin v. Irwin*, 3 Okl. 186, 41 P. 369, 372 (1895). Accordingly, the property division and support have a legitimate governmental purpose. After support alimony has been set, the party receiving the support can only be said to have a settled expectation of continuing to receive that support, because the death of the supporting party would end the support. Had the parties remained married, a change in the financial circumstances of the parties would inevitably result in a change in their standard of living. Prior law did not allow for contingencies of changed circumstances as the amended law does. Such a provision is made concerning child support whenever circumstances render such a change proper. 12 O.S.Supp. 1986, § 1277. Likewise, the legislature has

decided that changed circumstances in the area of alimony support should allow for changes in obligations and benefits provided between the parties. We find that the legislation before us is rationally related to the legitimate legislative purpose of regulating divorces.

Section 1289 of title 12, and its recent amendments provide that support alimony, no matter when awarded, is now modifiable. This leaves to the district courts the decision of whether or not to modify the support. All of the objections as to the equity of the situation, including consideration of the effect the award of support alimony had upon the property division, the reliance the parties had upon the law at the time of the divorce decree, whether or not the cohabitation of the former spouse with a member of the opposite sex continued after modification of the statute, and any other equitable matter may be considered by the trial court.

We herein hold that the intent of the legislature can be retrospectively effected. Accordingly, we overrule *Smith v. Smith*, 652 P.2d 297 (Okl.1982), and *Holdsworth v. Holdsworth*, 720 P.2d 326 (Okl.1986), reverse the order of the trial court, and remand this case for a disposition in a manner not inconsistent with this opinion.

REVERSED AND REMANDED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER and WILSON, JJ., concur.

SIMMS, OPALA, KAUGER and SUMMERS, JJ., dissent.

OPALA, Justice, with whom SIMMS, KAUGER and SUMMERS, JJ., join, dissenting.

The court today 1) sanctions judicial modification of support alimony obligations on grounds not authorized by law at the time of the monetary award's adjudication and 2) holds free from constitutional infirmity the terms of 12 O.S.Supp.1987 § 1289(G),

---

**9.** J. Nowak, R. Rotunda, & J. Young, Constitu-

tional Law, 476 (2d ed. 1983).

enacted *after* this appeal was lodged,[1] which provide that the "voluntary cohabitation" ground for alimony modification allowed by § 1289(D) [2] are to be given retrospective effect. It is my view that, like other money judgments, support alimony awards—both as to accrued and unaccrued portions of the decreed obligation—embody *vested rights* that are *constitutionally shielded from diminution* by after-enacted legislation. I hence recede from the court's pronouncement.

## I.

### CRITICAL FACTS IN LITIGATION

Appellant's 1984 motion sought modification of a divorce decree's monetary support alimony award. Movant relied upon obligee's voluntary cohabitation, a ground first allowed by § 1289(D).[3] The decree was rendered in January, 1979; the statute that authorized the modification sought below became effective October 1, 1979—*after* the award's rendition.[4] The trial court held that the benefits of the § 1289(D) alimony reduction remedy did not avail to an obligor

whose support duty stood decreed *before* the effective date of that enactment. I would today affirm the nisi prius ruling as a correct exposition of our fundamental law.

## II.

### JUDGMENTS ARE CONSTITUTIONALLY PROTECTED BY ART. V, § 54, OKLA. CONST.[5] FROM THE EFFECT OF AFTER–ENACTED LEGISLATION

Monetary support alimony adjudicated in a divorce decree constitutes a judicially created pecuniary obligation which is protected from the effect of after-enacted legislation on a footing equal to a money judgment.[6] The terms "judgment" and "decree" are synonymous. Judgments embody all the rights that necessarily accrue and absolutely vest in the creditor,[7] because they signify a final determination of the parties' rights in an action or proceeding.[8]

1. The terms of 12 O.S.Supp.1987 § 1289(G), *which became effective on June 3, 1987,* provide: The provisions of subsections (D) and (E) of this section *shall have retrospective* and prospective *application with regards to modifications* of the provisions of a final judgment or order for alimony as support, or of a divorce decree pertaining to the payment of alimony as support, *regardless of the date that the order, judgment, or decree was entered.* [Emphasis added.]

2. The pertinent text of 12 O.S.Supp.1987 § 1289(D) provides: *The voluntary cohabitation of a former spouse with a member of the opposite sex shall be a ground to modify final provisions of a final judgment or order for alimony as support.* If voluntary cohabitation is alleged in a motion to modify the payment of support, the court shall have jurisdiction to reduce or terminate future support payments upon proof of substantial change of circumstances.... [The underscored terms became effective October 1, 1979 and are codified in 12 O.S. 1981 § 1289(D). They remain unchanged since their effective date.]

3. For pertinent text of § 1289(D) see *supra* note 2.

4. See Okl.Sess.Laws 1979, Ch. 278 § 1 at 793–794.

5. The terms of Art. V, § 54, Okla. Const., provide: *The repeal of a statute shall not* revive a statute previously repealed by such statute, nor shall such repeal *affect any accrued right,* or penalty incurred, *or proceedings begun by virtue of such repealed statute.* [Emphasis added.] This section applies not only to repealed statutes but also to any legislative changes by amendment. See *Lee v. Volkswagen of America, Inc., infra* note 7 and *Prudential Property and Casualty Company v. Grimes,* Okl., 725 P.2d 1246, 1250 [1986].

6. *Stanfield v. Stanfield,* 67 Okl. 56, 168 P. 912, 914 [1917].

7. *Lee v. Volkswagen of America, Inc.,* Okl., 743 P.2d 1067, 1069 [1987]; *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 594 [1985]; *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 894 [1985]; *Oklahoma Water Res. Bd. v. Central Okl. M.C. Dist.,* Okl., 464 P.2d 748, 755 [1969]. See also, *Prudential Property and Casualty Company v. Grimes, supra* note 5.

8. *Finnell v. Finnell,* 113 Okl. 269, 230 P. 912, 913 [1924]; *Henderson v. Arkansas,* 71 Okl. 253, 176 P. 751, 753 [1918].

An alimony award is in some features different from other adjudicated monetary obligations.[9] It is not dischargeable in bankruptcy;[10] it can be enforced by contempt;[11] and it may be modified or terminated.[12] Despite these varying characteristics which are present in alimony awards but not in other money judgments, the protections affordable to the latter by Art. V, § 54, Okla. Const., also apply to the former with undiminished force.

There is *no question* that support alimony is modifiable and other money judgments are not. The issue here is *what law* must govern when the remedy of modification is sought in post-decree stages. Nothing in *Stanfield v. Stanfield*[13] or in other extant jurisprudence supports the court's conclusion today that when modification remedy is invoked, any *new* statutory ground not in force at the time the award was rendered can be available to the movant as a legal basis for altering the alimony's decreed value.[14] Modifiability does not *eo ipso* vitiate the award's fundamental nature *qua* adjudicated obligation for the payment of money that is protected by § 54 from changes made by after-enacted legislation.[15]

A judgment's effect and validity must be governed by the law in force *at the time of its rendition;* neither can be adversely *affected* by later changes in the applicable law.[16] Judgments comprise obligations of the highest nature known to law.[17] Rights reflected in a judgment are constitutionally shielded from legislative interference by after-enacted statutes.[18]

That portion of a support alimony obligation which is unmodified and unterminated at the time of its accrual stands on a constitutional footing *identical* with any other money judgment and is hence protected absolutely by § 54.[19] Section 54 clearly mandates that *unaccrued* installments be shielded also—not from modification or termination on pre-existing grounds—but from any *new* contingencies or conditions that have been imposed since the award's rendition. Property interests in a judgment are "vested" rights that are constitutionally insulated from the effect of later-passed statutory changes.[20] The legislature is powerless to burden judgments with conditions not present in the law at the time of adjudication. Judicial imposition of *new* conditions on prior judgments is equally prohibited by fundamental state law.[21]

Unaccrued monetary alimony also is protected by the *"proceedings begun"* clause in § 54.[22] That clause leaves unaffected by later-passed legislation any proceedings that were begun *before* the effective date of any new law. Efforts to enforce decreed alimony must be characterized as a proceeding begun under legislation in effect at the time the award was rendered.

9. *Grattan v. Tillman,* Okl., 323 P.2d 982, 984 [1958].

10. 11 U.S.C. § 523(a)(5).

11. 12 O.S. 1981 § 1276; *Potter v. Wilson,* Okl., 609 P.2d 1278, 1281 [1980].

12. 12 O.S.Supp.1987 § 1289(B), (D) and (E); *Dickason v. Dickason,* Okl., 607 P.2d 674, 676 [1980]; *Funnell v. Funnell,* Okl., 584 P.2d 1319, 1322 [1978].

13. See *supra* note 6.

14. See *Morley v. Hurst,* 174 Okl. 2, 49 P.2d 546, 548 [1935] and *Crump v. Guyer,* 60 Okl. 222, 157 P. 321, 322 [1916].

15. See *Stanfield v. Stanfield, supra* note 6.

16. *Mayhue v. Mayhue, supra* note 7; *Lee v. Volkswagen of America, Inc., supra* note 7; *Timmons v. Royal Glove Insurance Company, supra*

note 7; *Dickason v. Dickason, supra* note 12 at 677; *Prudential Property and Casualty Company v. Grimes, supra* note 5.

17. *Vaughn v. Osborne,* 103 Okl. 59, 229 P. 467, 470 [1924].

18. Art. V, § 54, Okla. Const., quoted at *supra* note 5. See also the authorities cited at *supra* note 7.

19. *Hammons v. Muskogee Medical Center Authority,* Okl., 697 P.2d 539, 542 [1985].

20. *Lee v. Volkswagen of America, Inc., supra* note 7; *Timmons v. Royal Globe Insurance Co., supra* note 7; *Crump v. Guyer, supra* note 14.

21. See discussion in part III of this dissent.

22. For the pertinent text of Art. V, § 54, Okla. Const., see *supra* note 5.

Within the meaning and contemplation of § 54 *every* such proceeding continues in a pending status from the point of the alimony's allowance until the award is fully satisfied by payment or terminated by the obligor's death. In short, *all* quests for post-decree modification or termination of alimony are to be deemed *proceedings begun* when the award was rendered. The movant's remedy—governed by the law in force at that time—stands unaffected by any subsequent changes.[23] The judiciary as well as the legislature is prohibited by the unequivocal terms of § 54 from granting relief based on after-enacted legislation.[24] Neither the courts nor the lawmaking body may burden unaccrued alimony liability with conditions upon the decreed obligation which were absent from the law at the time of adjudication.[25]

By providing in § 1289(G) that the § 1289(D) voluntary cohabitation ground for modifying alimony payments is applicable to awards rendered *before* the latter subsection's effective date, the legislature has created a constitutionally impermissible escape hatch for some alimony obligors and has deprived the adversely affected creditors of their fundamental law's protection under Art. V, § 54, Okla. Const.

### III.

### SECTION 1289(G)

### VIOLATES THE SEPARATION OF POWERS DOCTRINE

The functions of government are divided by our fundamental law among three branches, each of which is forbidden from encroaching upon the powers and responsibilities of the other.[26] Legislative power is mainly confined to making law, while the judiciary is invested primarily with adjudicative function—the authority to hear and determine forensic disputes.[27]

A judgment's validity depends upon the jurisdiction of the court that renders it.[28] If a judgment were rendered by a court without subject matter cognizance, *the enactment of a statute that attempts to confer after-the-fact jurisdiction upon that court would constitute an invalid exercise by the legislature of judicial authority.*[29] A law-making body *lacks power* to validate a judgment void when rendered. It is equally impotent retroactively to divest creditors of their vested rights in an adjudicated obligation.

Insofar as § 1289(G) sanctions changes in the terms of judgments rendered *before* the effective date of the statute in force at the time of rendition, it makes settled alimony claims vulnerable to readjudication upon grounds unknown at the time of the dispute's termination. The subsection clearly *depreciates* the value of decreed monetary support awards. Legislative alteration of judicially determined civil liability constitutes an exercise of adjudicative power that does not reside in the lawmaking body.[30]

---

**23.** See *First Nat. Bank of Pauls Valley v. Crudup,* Okl., 656 P.2d 914, 916 [1983]; *State v. McCafferty,* 25 Okl. 2, 105 P. 992, 996 [1909].

**24.** *State v. Worten,* 167 Okl. 187, 29 P.2d 1, 4 [1934].

**25.** *Allgood v. Allgood,* Okl., 626 P.2d 1323, 1325 [1981], is but one example of this court's recognition that support alimony may not be modified on grounds that were not in force when the award was rendered.

**26.** Art. IV, § 1, Okla. Const.; *Puckett v. Cook,* Okl., 586 P.2d 721, 722 [1978]; *Jones v. Freeman,* 193 Okl. 554, 146 P.2d 564, 573 [1944], appeal dismissed 322 U.S. 717, 64 S.Ct. 1288, 88 L.Ed. 1558.

The terms of Art. IV, § 1, Okla. Const., provide:

"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, *and neither shall exercise the powers properly belonging to either of the others.*" [Emphasis added.]

**27.** *Tweedy v. Oklahoma Bar Association,* Okl., 624 P.2d 1049, 1054 [1981]; *In re Courthouse of Okmulgee County,* 58 Okl. 683, 161 P. 200, 201 [1916].

**28.** *Reynolds v. Brock,* 122 Okl. 110, 250 P. 999, 1000 [1926].

**29.** *Reynolds v. Brock, supra* note 28.

**30.** Each separate department of government must use restraint to avoid encroaching upon the functions assigned to some other branch. See *Sterling Refining Co. v. Walker,* 165 Okl. 45, 25 P.2d 312, 318 [1933] and *Earl v. Tulsa County Dist. Court,* Okl., 606 P.2d 545, 547 [1980].

## IV.

### SECTION 1289(G) VIOLATES ART. II, §§ 7,[31] 23[32] AND 24[33] AND ART. V, § 46[34] OF THE OKLAHOMA CONSTITUTION

The rights that become vested in every judgment constitute private property within the meaning of Art. II, §§ 7, 23 and 24, Okla. Const.[35] Sections 23 and 24 shield those rights from *any* taking for public use without just compensation as well as from taking for private use with or without compensation. Section 7 interdicts deprivation of property without due process of law. The terms of 12 O.S. Supp. 1987 § 1289(G),[36] which authorize modification of judgments rendered before the section's effective date, operate to extinguish vested or accrued property rights protected by the cited provisions of our fundamental law.[37]

Because § 1289(G) also impairs the enforcement of a *narrow subclass* of judgments—unaccrued monetary support alimony under awards rendered before the effective date of § 1289(D)—its terms violate Art. V, § 46, Okla. Const.[38] The cited provision of our fundamental law *absolutely and categorically mandates* that statutory changes in the methods for collecting debts or enforcing judgments be made by legislation that affects *all* adjudicated obligations *in like manner.*[39]

## V.

### SUMMARY

Article V, § 54, Okla. Const., makes monetary support alimony awards—both as to

---

**31.** The terms of Art. II, § 7, Okla. Const., provide:

"No person shall be deprived of life, liberty, or *property, without due process of law."* [Emphasis added.]

**32.** The pertinent terms of Art. II, § 23, Okla. Const., provide:

"No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner...."

**33.** The pertinent terms of Art. II, § 24, Okla. Const., provide:

"Private property shall not be taken or damaged for public use without just compensation. * * *"

**34.** The pertinent terms of Art. V, § 46, Okla. Const., provide:

"The Legislature shall not, except as otherwise provided in this Constitution, *pass any local or special law* authorizing * * * providing or changing the methods for the collection of debts, or the enforcement of judgments * * *" *[Emphasis added.]*

**35.** See *Swatek v. Board of Regents of Oklahoma Colleges,* Okl., 535 P.2d 295, 298 [1975], citing *Graham v. City of Duncan,* Okl., 354 P.2d 458, 461 [1960].

**36.** See *supra* note 1 for the pertinent text and effective date of § 1289(G).

**37.** See *Reynolds v. Brock, supra* note 28 at 1001 and *Swatek v. Board of Regents of Oklahoma Colleges, supra* note 35.

In *Swatek,* a paving district was established by a city ordinance that imposed assessments against each benefited lot, payable in annual installments, and created a lien upon each. After issuance of paving bonds, but before the last installments came due, the Board of Regents purchased land within the district. Owner of the bonds secured by affecting the property sought payment after the installments became delinquent. Because the installments were the only source from which the bonds could be paid, and since the owner was precluded by statute from foreclosing upon the liens against the Regents' land, a reverse condemnation proceeding was filed. The court held that the land purchase by the Regents, made without satisfying the liens, amounted to a "taking" of property for public use without just compensation. By analogy, just as the state was unable to purchase land *after* assessments were levied and *under color of statute divest* a lienholder of the right to payment, *so is the legislature prohibited from using after-enacted legislation to divest judgment holders of the rights that became vested in them at the time of final adjudication.*

**38.** See *supra* note 34 for the pertinent text of Art. V, § 46, Okla. Const.

**39.** See *Maule v. Independent School District No. 9 of Tulsa County,* Okl., 714 P.2d 198, 204 [1986]; *Barrett v. Board of Com'rs of Tulsa County,* 185 Okl. 111, 90 P.2d 442, 446–447 [1939]; see also, *Prudential Property and Casualty Company v. Grimes,* (Opala, J., concurring) *supra* note 5 at 1251.

accrued and unaccrued installments—impervious and invulnerable to tinkering by after-enacted legislation. The § 1289(D) ground for modification, if enacted *after* the affected decree's rendition, is not available to the obligor as a basis for modification. Recently enacted § 1289(G) violates the doctrine of separation of powers and offends Art. II, §§ 7, 23 and 24, as well as Art. V, §§ 46 and 54, Okla. Const.

I would continue to stand by the teachings of *Smith*[40] and *Holdsworth,*[41] which are both overruled by today's pronouncement; I would affirm the trial court's order denying relief to the obligor and strike down § 1289(G) as unconstitutional.

---

40. *Smith v. Smith,* Okl., 652 P.2d 297 [1982].

41. *Holdsworth v. Holdsworth,* Okl., 720 P.2d 326 [1986].