## MEHARG et al. v. EDDLEMAN.

No. 27473.   Jan. 18, 1938.

Rehearing Denied April 26, 1938.

Application for Leave to File Second Petition for Rehearing Denied June 14, 1938.

Al Nichols, Ben Hatcher, and A. C. Kidd, for plaintiffs in error.

Wimbish & Wimbish, for defendant in error.

RILEY, J. This is an action in quantum meruit by Eddleman, plaintiff below, real estate broker, for commission from sale of an oil and gas lease on land belonging to defendants West and Meharg. The parties will be referred to as they appeared below. The Oklahoma State Bank of Ada was a party defendant in the lower court merely as a garnishee.

Plaintiff in a conversation with Meharg learned the latter owned a tract of land valuable for oil and gas exploration and stated he would like to work up some deal on it. Meharg testified he set the price at $100 per acre cash, and $150 per acre in oil if and when produced, all net to him; that he refused to list land with plaintiff and stated he would pay no commission. Meharg gave plaintiff names of towns where he could be reached for three consecutive nights. Plaintiff returned to his home in Ada. where he soon interested Marcum, a producer, in the lease and called Meharg at Idabel, and informed him of the pros-

pect, but did not disclose Marcum's name. On the following morning defendant West, also a resident of Ada, contacted plaintiff and inquired concerning the transaction and stated he owned an interest in land and wanted to know the name of the prospect. West testified he had called Meharg at Idabel subsequent to plaintiff's call. and learned of the prospective sale. Plaintiff, who previously did not know West owned an interest in land, gave him Marcum's name, and West said Marcum would be satisfactory if a deal was made.

Plaintiff then disclosed West's interest to Marcum, and the latter suggested they go to West's office, which was done. Marcum told West he would like to talk with him and Meharg concerning a deal on the land, and West replied that Meharg would be in Ada on a certain date, at which time it was agreed they would all get together. Concerning this conversation, plaintiff testified as follows:

"Q. Well, when you had your conversation with West. what. if anything, was said about a commission? A. He (West) asked me about that and I told him Mr. Meharg said it was a net price quoted, and that we would have to get with the seller and the purchaser and have an agreement in their presence regarding the commission. He (West) said, 'You are entitled to a commission and I would like to see you get it.'"

Meharg arrived in Ada a day or so before the agreed meeting date, and West immediately contacted Marcum, arranged a meeting at his office, and a deal was made for $100 per acre in cash, $100 per acre in oil when produced, and Marcum was to drill a well. Plaintiff was not informed of this meeting. Marcum insisted that $975, 5 per cent. of the cash purchase price, be placed in the Oklahoma State Bank of Ada "* * * to be held for 30 days in escrow to protect an outstanding commission claimed by Lee Eddleman." Marcum testified he did this for his own protection because he knew there was a controversy about the commission.

Plaintiff admitted that neither Meharg nor West had agreed to pay a commission or list the property with him.

Subsequent to the sale, Meharg had a conversation with plaintiff concerning which Meharg testified as follows:

"Q. What was said there? A. I heard he was looking for me and wanted to see me and I went over to see him and he said he wanted me to give him a check for the commission, and I asked him what

commission, and he said 'on this deal,' and I told him it was the understanding that I would not pay any commission, and he said, 'Don't deny that that was the agreement between me and you, but someone owes me a commission.'"

Concerning another conversation Meharg testified:

"Q. Did you ever—state whether or not you ever had a conversation with him in which he complained about. the deal being closed too quick? A. He said that I had come in before I said I would and that we made the deal before he had time to get this commission out of Marcum."

Plaintiff took the stand in rebuttal, but did not deny or qualify the above two quotations of testimony. On cross-examination plaintiff testified as follows:

"Q. How long after the deal was closed was it that you had that conversation? A. The morning the deal was closed— and I didn't know anything about it. As soon as I found it out, I then went down and talked to Mr. West and stated to him as before, that the commission was due out of this sale and it was immaterial which side it came from."

The defendants requested a directed verdict, which was refused. A verdict and judgment was rendered for plaintiff in the amount of $975. Defendants contend there was insufficient evidence to sustain the verdict.

The general rule of law entitling a broker to compensation is stated in 9 C. J. 554, as follows:

"To entitle a broker to compensation, he must have been employed to negotiate the transaction in connection with which his services were rendered. In the absence of such employment, or in other words, where the broker acts as a mere volunteer, he is not entitled to compensation, although his services are the efficient cause of bringing the parties together and result in a sale or other contract between them."

Such a contract may be either express or implied. Plaintiff contends his contract was of the latter type. The rule applicable thereto is stated in 9 C. J. 556:

"The employment and consequent agreement to pay commissions may also be implied from the circumstances; as where the principal accepts the benefits of the broker's services with the knowledge that he expects to be paid therefor, or where he places property in the hands of the broker for sale, and a sale is made through the efforts of the broker. But a contract of employment and an agreement to pay commissions will not be implied from the mere fact that the owner of property consents

to the rendition of services by a broker which result in a sale of the property. * * *"

This court adopted the above rule in the case of Holdren v. Carpenter, 98 Okla. 230, 224 P. 719, as follows:

"If a real estate broker is unable to prove an express promise to pay for his services, he must show facts from which the law will imply a promise on the part of the alleged principal to compensate him."

We have considered all the evidence in this record and are inclined to the contention of defendants. In addition to statements by defendants that they would not pay a commission, which were admitted by plaintiff, there is the statement of plaintiff on cross-examination that he was entitled to a commission and it was "immaterial which side it came from." This indicates that plaintiff was himself uncertain which party was his principal or that he was acting for both seller and purchaser. Neither did plaintiff undertake to contradict the testimony of defendants above quoted wherein it was stated plaintiff complained that Meharg acted before plaintiff could get his commission from Marcum, and that plaintiff stated he didn't deny it was agreed that Meharg would pay no commission. It is not the province of this court to make contracts by placing strained implications on the circumstances shown by the evidence.

In his answer brief plaintiff incorporated a motion to dismiss this appeal for the reasons, (1) that neither the court nor the forum. nor the name of the trial judge, nor the nature of the cause of action appears upon the cover of defendant's brief as required by Rule 13; (2) that defendant's brief does not set out any specifications or assignments of error; and (3) that the Oklahoma State Bank, not having filed a motion for new trial nor given notice of appeal, is not a proper party to this appeal.

The defendants thereafter filed a reply brief setting forth all the assignments of error contained in the petition in error, and the cover of the reply brief complies with Rule 13. In the order overruling motion for a new trial the judge ordered the Oklahoma State Bank of Ada to pay the money held in escow to the court clerk to be disbursed in accordance with the outcome of this appeal. Apparently the bank was included in this appeal through inadvertence and cannot be affected hereby. The motion to dismiss will, under these circumstances, be denied.

Judgment reversed, with directions to enter accordingly.

OSBORN, C. J., and PHELPS, GIBSON, and HURST, JJ. concur.