Jack Johnny MOCNIK, Jr.,
Appellant/Cross
Appellee,

v.

Barbara Ann MOCNIK, Appellee/Cross
Appellant.

No. 72658.

Supreme Court of Oklahoma.

July 7, 1992.

As Corrected July 9 and 22,
and Aug. 18, 1992.

SUMMERS, Justice:

The primary legal question in this appeal is whether the goodwill of a medical practice is a marital asset subject to property division in a divorce. Since the case was tried below we have ruled in *Travis v. Travis*, 795 P.2d 96 (Okla.1990), that the goodwill of a law practice of a sole practitioner is not a divisible marital asset. We now conclude that the trial court erred in awarding the wife judgment based on an interest in the goodwill of her husband's medical practice because the value of the Husband's interest was determined by the stockholder's agreement. The award for alimony in lieu of property division is accordingly reduced. Upon review of other issues urged on appeal, we increase the award of support alimony, affirm the order for child support, alter one additional aspect of the property division in favor of the wife, reverse and remand on the issue of counsel fees and costs, and otherwise affirm the trial court.

## I. FACTS AND PROCEDURAL POSTURE

Barbara and Jack Mocnik were married on May 21, 1971, and separated in 1988. Two children were born of the marriage: Shay in 1979 and Matthew in 1982. During the course of the marriage Jack attended medical school, and then did his internship and radiology residency while on active duty with the Navy. Barbara was employed until Shay was born, and then remained at home. After his service in the Navy Jack joined the Tulsa Radiology Associates, and practiced as a radiologist throughout these proceedings.

On December 21, 1988, a divorce was granted to the parties, and a decision on the balance of the issues was deferred until January 5, 1989, the date of the Decree of Divorce. As to property awarded in kind, according to the figures ascertainable from the trial court's order, the wife was awarded $37,950.00 in joint marital property, and the husband was awarded $43,575.00 in joint marital property.[1]

Sam P. Daniel, Jr., Doerner, Stuart, Saunders, Daniel & Anderson, Richard B. Noulles, Gable & Gotwals, Tulsa, for appellant/cross appellee, Jack Johnny Mocnik, Jr.

C. Michael Zacharias, Rineer, Zacharias & Corbitt, Tulsa, for appellee/cross appellant, Barbara Ann Mocnik.

---

**1.** These figures include only those items which were given a dollar value by the trial court.

The trial court separately valued the professional corporation and the husband's interest in the corporation. To arrive at the Husband's interest therein, the trial court used the value of his stock, together with his proportionate ($\frac{1}{15}$) part of the accounts receivable, sums due under a non-competition agreement, and goodwill. From this value, the court awarded to the wife as a property alimony judgment the amount of $111,088.00, to be paid in a lump sum within 120 days or as a monthly payment for sixty months, such payments to include interest.

The award for support alimony was in the amount of $60,000.00, payable over thirty-six months. Child support was set at $2,000.00 per month. The husband was required to maintain medical and dental insurance for the children and he was also ordered to pay one-half of the medical, dental, psychiatric and psychological expenses of the children.[2]

They do not include such things as outstanding debt, personal effects or property acquired after separation. The parties differ in their calculations of the net value of the property awarded to them by the trial court. Husband's Brief in Chief states that Wife received jointly accumulated property with a net value of approximately $56,225.00 and that he received jointly accumulated property with a net value of approximately $65,430.00. Wife's Answer Brief states that she received property with a net value of approximately $64,225.00 and that husband received property with a net value of approximately $64,450.00.

The trial court awarded the following property to the Wife:
*"To the Plaintiff* [Wife]:
"A. Her computer and all related items, valued at $2,400.00;
"B. All personal property presently in her possession, valued at $10,000.00;
"C. Any other personal clothing or personal items left in the marital residence which the defendant is to return to her within five days;
"D. The mini van, valued at $8,500.00, subject to the debt thereon to be determined proportionately considering the original cost and monthly payments, and the plaintiff is directed to hold the defendant harmless with regard to the debt thereon;
"E. Approximately $7,000.00 taken at the time of separation;
"F. One-half of the T–Rowe Price account, valued at $7,000.00;
"G. One-half of the Fidelity Bond account, valued at $1,350.00;
"H. Her IRA account, valued at $1,700.00;
"I. One-half of the Dominion Resources stock, value unknown;
"J. One-half of defendant's interest in the Tulsa Radiology Associates (TRA) Pension and Profit Sharing Plan as of its 4/23/88 value, to be divided by Qualified Domestic Relations Order comporting with the rules and conditions of the TRA Plan;
"K. The court further finds that the plaintiff's diamond ring, valued at $1,000.00, all furniture and debt and personal property acquired since separation is her personal and separate property and is awarded to her."
Decree of Divorce, pp. 4–5.

The trial court awarded the following property to the husband:
*"To the Defendant* [Husband]:
"A. The homestead at 5829 E. 86th St., which the court values at $270,000.00, subject to a mortgage balance of $244,000.00, and the defendant is to hold the plaintiff harmless with regard to that mortgage indebtedness.... [Legal description deleted.]
"B. All personal property in his possession, valued at $4,025.00; whatever amount is in his checking account;
"C. The 1984 Jeep, valued at $5,500.00;
"D. Bass boat and motor, valued at $4,000.00;
"E. One-half of the T–Rowe price [sic] account, valued at $7,000.00;
"F. One-half of the Fidelity Bond account, valued at $1,350.00;
"G. His IRA account, valued at $1,700.00;
"H. One-half of the Dominion Resources stock, value unknown;
"I. One-half of defendant's interest in the TRA Pension and Profit sharing plan as of its 4/23/88 value, and subject to a Qualified Domestic Relations Order to be approved by the court;
"J. All jointly acquired debt of the marriage not previously mentioned or assigned as of 4/13/88 in the approximate sum of $6,000.00;
"K. His medical practice and the stock therein.
"L. The court finds that the defendant shall be awarded as his separate property a Cannon [sic] AE–1 camera and all the paraphernalia, lenses and photo table associated with it; any medical books and periodicals; all furnishings, debt and personal property acquired since the separation; any guns, sporting goods and equipment; the duck-stamp prints and the exercise bike, together with all bonuses received by the defendant after the 4/13/88 date."
Decree of Divorce, pp. 5–6.

2. Accordingly, the court-ordered monthly payment by Husband was set as follows:

| | |
|---|---|
| Property alimony (60 months) | $1,851.50 (plus statutory interest rate) |
| Support alimony (36 months) | 1,666.67 |

Both parties appeal from this award. As appellant, Husband urges that the trial court erred in considering the goodwill of the professional corporation to be a divisible asset of the marriage. He also challenges the amount of child support awarded. Wife, as cross-appellant, urges that the value reached by the trial court as to the goodwill was too low. She also asserts that the amount of support alimony and child support is insufficient, and that Husband should have been required to attend counseling with the children. She challenges the court's ruling on certain funds she took at time of separation and the court's failure to recognize an alleged birthday gift. Lastly, she seeks payment of her attorney fees.

## II. MOTION TO STRIKE BRIEF

■ Before reaching the merits of this appeal, we must first address a procedural issue raised by Wife. Wife has filed a motion to strike the brief of Husband for failure to comply with Rule 19 of this Court's Rules. *See* 12 O.S.1981 Ch. 15, app. 1. Specifically, she urges that the margins and type size are incorrect, and if corrected the brief would exceed the thirty page limit. This Court ordered that the brief be amended to conform with the Rules, and set a date for compliance. Resolution of the motion was deferred for discussion with the merits of the appeal.

| | |
|---|---|
| Child support | $2,000.00 |
| Medical insurance (at time of decree) | 75.26 |
| Dental insurance (at time of decree) | 28.39 |
| Total monthly payment excluding interest | $5,621.82 |

3. While the trial court followed the "straight capitalization" view, two other methods were presented. Appendix F figured goodwill based upon a non-compete agreement which TRA had with radiologists at the hospital in Broken Arrow, Oklahoma. The Broken Arrow radiologists paid TRA $300,000 for the agreement. After comparing the number of beds in that hospital with three other hospitals in the surrounding area, the expert concluded that Husband's portion of the goodwill value based upon the noncompete agreement was $332,000. Appendix G figured goodwill based upon a salary scale by comparing the compensation of the average stockholder in TRA and the new employees'

Husband filed a brief as required by the order of this Court, and we find that it complies with the requirements of Rule 18 for briefs printed by professional printers. The motion is denied. *Meharg v. Eddleman*, 183 Okl. 102, 80 P.2d 219, 221 (1938).

## III. DIVISION OF ASSETS OF THE PROFESSIONAL CORPORATION

The trial court set a value on the husband's interest in Tulsa Radiology Associates at $203,550.00. This amount included the husband's stock value, a contractual ⅟₁₅th share of accounts receivable, the value of sums owed the corporation under a noncompetition agreement and the goodwill of the professional corporation.

At trial, Wife's expert submitted three different methods by which the value of the goodwill of the professional corporation could be valued.[3] One of the methods used as a key figure that amount earned by Husband over and above the average salary of a radiologist. This figure was then "capitalized" to determine the dollar value of the goodwill of the company. Capitalizing is a method of converting a periodic payment, in this particular case the excess earnings per year of $46,000, into an equivalent capital sum or sum in hand.[4]

The expert stated that these figures were only for the purpose of marital disso-

compensation. Wife's expert testified that the difference in compensation represented the "buy-in price" for becoming a stockholder in TRA. Comparing the two sets of salaries, he concluded that the goodwill value of TRA using this method was $230,000. The trial court set a goodwill value lower than any testified to by the expert.

4. See BLACK'S LAW DICTIONARY 191 (5th ed. 1979), for definition of "Capitalize". Kieso and Weygandt in their book, *Intermediate Accounting* discuss capitalization and show how to figure it. They state that setting the rate of capitalization is fairly subjective, and that the lower the rate, the higher the value of good will. They then give two examples. In the first a figure of $21,500 of excess earnings is capitalized at 25%. This is done by dividing $21,500 by 25% resulting in a figure of $86,000. The second example divides the $21,500 by 15% resulting in a figure of $143,333. D. Kieso & J. Weygandt, *Intermediate Accounting* 507 (5th ed. 1986).

lution and that a different value would be used for selling the practice. The trial court used capitalized excess earnings to place a value upon Husband's share of the goodwill in the corporation. It appears he valued the Husband's share of goodwill at $115,000.00.

Husband's expert witness testified that the Stock Purchase Agreement set the value of his share of corporate stock at $9,652.53. The agreement stated that in the event of Husband's termination of employment he would be entitled to that amount, plus a proportionate share of the discounted accounts receivable.

In determining the Husband's share of the value of TRA, the court added stock value ($9,653.00), Husband's portion of the discounted accounts receivable ($63,898.00), his portion of the non-competition agreement ($15,000.00) and his portion of the goodwill of the corporation ($115,000.00) to reach a total of $203,550.00. The court then awarded one-half of this amount plus $9,313.00 (apparently a discretionary amount to somewhat equalize the "in kind" property division). The total alimony in lieu of property awarded to Wife amounted to $111,088.00.

In *Travis v. Travis, supra,* we addressed the question of whether the goodwill of the sole practitioner's law practice was a marital asset. Goodwill has been defined as the "favor or prestige that a business has acquired beyond the mere value of what it sells." Webster's New Collegiate Dictionary 496 (1973); The Oklahoma Statutes define it as, "the expectation of continued public patronage...." 60 O.S.1991 § 315. According to *Travis* the goodwill value of a business "is the value that results from the probability that old customers will continue to trade with an established concern." *Id.* at 96 *quoting Freeling v. Wood,* 361 P.2d 1061, 1063 (Okla.1961). We held in *Travis* that the law practice of a sole practitioner had no goodwill value because "the reputation of the lawyer cannot be purchased by another seeking to acquire an established practice." *Id.* at 100. This is especially true when the professional is a sole practitioner.

Although the trend seems to favor the recognition of goodwill as a divisible asset, we pointed out that courts are divided on this issue. *Id.* at 97 n. 1. Relying on the reasoning of our sister jurisdictions, we noted that goodwill value, if considered an asset divisible in divorce, is particularly difficult to quantify especially in light of the probability that the practitioner could not realize in dollars that goodwill value.

There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale of another method of liquidating value. *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983).

Consistent with our holding in *Travis,* the Pennsylvania Supreme Court in *McCabe v. McCabe,* 525 Pa. 25, 575 A.2d 87 (1990) held that for all practical purposes, the goodwill of a partnership could not be considered marital property. It pointed out there is no market by which the value of that particular practice may be compared. The court relied on the partnership agreement, and held that the rights of the partners and values of their interests were fixed by that agreement. *See also Moebus v. Moebus,* 529 So.2d 1163 (Fla.Dist.Ct.App. 1988); *In re Marriage of Hogeland,* 448 N.W.2d 678 (Iowa Ct.App.1989); *Sweeney v. Sweeney,* 534 A.2d 1290 (Maine 1987); *Hertz, supra; Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984); *Smith v. Smith,* 709 S.W.2d 588 (Tenn.Ct.App. 1985); *Finn v. Finn,* 658 S.W.2d 735 (Tex. Ct.App.1983); *Johnson v. Johnson,* 771 P.2d 696 (Utah Ct.App.1989); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (Ct.App.1981).

We agree with the reasoning of the *McCabe* case. *Here, there is no way for Husband to realize his share of the goodwill of the corporation.* The agreement between the stockholders, including Husband, states unambiguously what value may be recovered in the event a stockholder seeks to withdraw from the practice. Furthermore, Husband is required by the agreement to sell his stock back to the corporation for a price equivalent to the

book value of the stock. As for market value, practical considerations—aside from his contractual obligation to sell his stock to the corporation—dictate that only a very select market exists for this stock.

■ In other words, Husband cannot recoup this goodwill value in any other manner than continued professional services with TRA. He has no right to sell, separate and apart from the stock, his share of goodwill. This concept was well articulated in *Holbrook*, 309 N.W.2d at 354:

> The concept of professional goodwill evanesce when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earning in the future. It cannot be separately sold or pledged by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

While the value of a going concern (including the goodwill) may reflect what the Husband may earn sometime in the future, future earnings are not marital property.

> Granted, a "going concern" value would better reflect the future income that Mr. McCabe might earn as a result of holding a partnership interest. However, future income is not marital property because it has not been acquired during the marriage. It is not, therefore, subject to equitable distribution. *McCabe*, 575 A.2d at 89.

Wife's expert present three different ways of valuing the husband's share of goodwill. However, all of these disregard the express language of the stockholder's agreement. As our sister jurisdictions have held, the agreement is controlling under these circumstances. *Sweeney, supra;*

*Hanson v. Hanson*, 738 S.W.2d 429 (Mo. 1987); *Saint–Pierre, supra.*

In *Hanson, supra*, the Missouri Supreme Court addressed the question of goodwill value in a medical practice. Observing that goodwill can be considered a marital asset, the court then addressed the question of how to set a value on this asset. Although favoring the fair market value approach, the court agreed that valuation according to a buy-sell agreement is also a recognized and viable alternative in certain instances. The Missouri court specifically rejected the straight capitalization formula, the capitalization of excess earnings formula and the Internal Revenue Service valuation of capitalized earnings. The reason for the disapproval of these accounting formulas was because "[t]he very purpose of capitalization formulae is to place a present value on the future earnings of the business entity being valued." *Hanson*, 738 S.W.2d at 436. Because future earnings are not marital property, the court decided that if goodwill is to be divided its value must be determined either by a buy-sell agreement or the fair market value.

■ We agree with this reasoning. Not only is the capitalization method speculative, it is simply a method of valuing future earnings. Future earnings are not marital property. If goodwill is to be divided as an asset, its value should be determined either by an agreement or by its fair market value. Both of these methods are widely accepted for valuing goodwill. *See* annotation, 78 A.L.R.4th 853, 860–71 (1987).

TRA and Husband entered into an agreement by which Husband was limited to the terms of the agreement as to the value of his portion of TRA. We therefore hold that on the evidence before it the trial court erred in valuing and including as divisible marital property any goodwill of TRA. According to the agreement, Husband's share of the professional corporation is the value of his stock, his share of the receivables, and his share of the non-competition agreement, totaling $88,551.00.

## IV. DIVISION OF OTHER PROPERTY

Wife urges that the trial court erred by $11,000.00 in the division of other property. Particularly, she points to the $7,000.00 she removed from joint funds at the time of separation and a $4,000.00 gift from the T. Rowe Price account. The trial court included the $7,000.00 in the property specifically awarded to her. At the time of trial, only $444.00 remained from the $7,000.00, the bulk having been spent on family necessities. We find no abuse of discretion in the trial courts' treatment of the $7,000.00.

As for the alleged gift, we find no reference to it in the trial court's Order but it appears to have been made from the "T-Rowe Price" account (See footnote 1), which was divided equally by the trial court. Testimony of both parties was that she was informed it was a gift for her birthday. Due to either (1) her not spending it or (2) his not putting it into a spendable account, she never enjoyed the benefit of her gift. We believe the evidence shows donative intent, delivery, and acceptance. *McSpadden v. Mahoney*, 431 P.2d 432 (Okla.1967).

The "in kind" property division should reflect that $4,000.00 of the $14,000.00 T-Rowe Price account belongs to Wife as her separate property. The remaining $10,000.00 should be split equally between Husband and Wife. The result is that Wife is entitled to $9,000.00 from the account and Husband is entitled to $5,000.00. The "in kind" property division is thus modified to award Wife $39,950.00 and Husband $41,575.00.

## V. MODIFICATION OF PROPERTY DIVISION

Our holding regarding the goodwill value of Husband's share of TRA necessitates a different division of property. Because the value of the practice (excluding goodwill) was firmly established by the evidence, there is no need for remand to the trial court the chore of fixing value. This Court may enter an order of property division that the trial court should have done once the errors complained of on appeal have been corrected. *See Teel v. Teel*, 766 P.2d 994, 997 (Okla.1988); *Roberson v. Roberson*, 439 P.2d 938, 940–41 (Okla.1968).

We begin with our determination that Husband's 1/15th share of the medical practice is valued at $88,551.00. Realizing that the division of property in kind favored Husband by approximately $2,000.00, we find that an equitable division of the practice is $48,551.00 to Wife and $40,000.00 to Husband. Wife's amount shall be payable in a lump sum within 120 days, or over a period of five years at the rate of $809.00 per month for sixty months with interest at the statutory rate as of the date of the Decree of Divorce, January 5, 1989.

## VI. SUPPORT ALIMONY

Wife was awarded $60,000.00 in support alimony to be paid in monthly payments of $1,666.67 for thirty-six months. Wife argues that the amount is insufficient considering the length of the marriage and the income of Husband. The trial court found that the Husband had an earning capacity of $215,000.00 per year and Wife had an earning capacity of $20,000.00.[5]

The record reveals that the parties were married May 21, 1971, and that they separated on April 13, 1988. They had two children, a daughter nine years old and a son who was six years old. The parties were married before Husband entered medical school. Wife graduated with a bachelor's degree in 1971, and when the parties were married, Husband was working on a master's degree in chemistry. She went to work as a bookkeeper and later as a secretary during his medical schooling. Husband worked as a chemist during medical school. He applied for a naval scholarship which funded his tuition, books, and living costs.

Husband was transferred several times and Wife moved with him. She was employed until the birth of their daughter.

---

5. Husband testified that his total compensation package as a fifth-year stockholder exceeded $237,000.00, including his pension and profit sharing benefits.

After that she stayed home, raising the children and tending household business. After Husband left the Navy he joined TRA.

In 1985, Wife was employed part-time, earning $500.00 per month. Her top wage was $18,000.00 a year. She quit her job shortly before the divorce because the funding for her position was being stopped.

At the time of trial, Wife was seeing a psychologist for depression and anxiety. This condition was caused not only by the divorce but also because she had a hysterectomy during the separation which weakened her physical condition. The psychologist stated that Wife was not currently able to work full-time or go to school full-time. Wife testified that she wanted to go back to school for a doctorate in psychology. She estimated that it would take five years and $25,000.00 to attain this goal.

■ The trial court's judgment will not be disturbed on appeal unless, in our opinion, it is against the great weight of the evidence. *See Peters v. Peters*, 539 P.2d 26, 27 (Okla.1975); *Hink v. Hink*, 131 Okl. 164, 268 P. 282, 283 (1928). Because division of property and alimony are actions of equitable cognizance, we review the support alimony award, considering our ruling with regard to the property division.

■ The trial court found that Husband's income was in excess of $215,000.00, while Wife's earning potential is virtually nothing until she is physically recovered and only $20,000.00 thereafter. We must agree with the Wife that the amount awarded is insufficient. Based on the length of the marriage, the needs of Wife for living expenses and education and her current income potential, we find that Wife should be awarded $120,000.00 in support alimony, payable in monthly payments of $2,000.00 for sixty months.

## VII. CHILD SUPPORT

Wife urges that the amount awarded by the trial court for child support is insufficient. Husband argues that the amount should be reduced to the amount set by the Child Support Guidelines. He also urges that it should readjusted after considering the amount of support alimony awarded to Wife, the amount of joint debts for which he is responsible, and the large amount of visitation allowed by the court.

The trial court set child support at $2,000.00 per month. This was based on a finding that the combined joint income of both parties was $235,000.00 per year, or $19,543.00 per month. The Guides set payments at $1,352.00 per month for those with income of $10,000.00 and then allows for an additional amount to be set by the court if the income is greater than $10,-000.00.

Wife presented evidence that the direct and indirect expenses of the children exceeded $4,700.00 per month. The attorney for Husband cross-examined Wife regarding these expenses, and pointed out that a few of the expenses were unnecessary.

■ Looking to the Guides, we note that at an income of $10,000.00, monthly payments of $1,352.00 are required. This equals 13.52% of the monthly income. Taking the gross monthly income of the parties of $19,543.00 and multiplying it by the percentage mentioned above, $2,642.21 per month would be consistent with the Guides. However, Husband would not be required to pay this full amount, as the gross monthly income included the income of Wife. Husband's income was found to be 91% of the total combined income and thus his obligation should not exceed 91% of the child support, or $2,404.41.

Considering that Husband was given visitation of two weekends per month, one weekday per week, and *eight consecutive weeks in the summer*, we do not find it an abuse of discretion that the trial court reduced the above figure to $2,000.00 per month. Subsection 18 of 12 O.S.Supp.1989, § 1277.7 states that "[T]he court may make adjustments to child support guidelines for periods of extended visitation." We affirm this award.

## VIII. COUNSEL FEES AND COSTS OF LITIGATION

■ Wife complains (Brief on Cross–Appeal P. 11) of the trial court's decision to

leave her burdened with her own costs of litigation, including attorneys fees. Having reviewed the divisible assets, finding little liquidity at her disposal, and assessing the overall disposition of the matter, we conclude that the wife's complaint in this regard is well taken. We therefore direct the trial court on remand to conduct an adversary hearing on the fair value of her attorney's services, and then enter an order on attorney fees and costs of litigation under 43 O.S.1989 Supp. § 110 that is just and proper considering the means and property of each.

## IX. FINAL ISSUES

■ Wife asserts that the trial court erred in not requiring Husband to participate in the psychological counseling of the children. Husband testified that his relationships with the children had improved since the separation and that he felt no need to attend their counseling sessions. We find no abuse of discretion in the trial court's ruling.

Wife also asserts that extended visitation is not in the best interests of the children. There is no evidence to support this assertion. The trial court did not abuse its discretion.

## CONCLUSION

In summary, we affirm the trial court's division of property in kind, except we remand and direct the trial court to award the wife an additional $2,000.00 of the $14,-000.00 in the T–Rowe Price account, which will require also reducing Husband's share thereof by $2,000.00. Because we also reach a different valuation as to the business we remand and direct the trial court to enter a judgment for alimony in lieu of property division in favor of Wife in the amount of $48,551.00, payable either by lump sum within 120 days, or by monthly payments of $809.00 plus statutory interest. We also order that on remand the trial court enter judgment for support alimony in the sum of $120,000.00, payable at $2,000.00 per month for sixty months. The trial court's original order for child support is affirmed. On remand the trial court shall reconsider the matter of Wife's attorneys fees and costs of litigation. We affirm the trial courts' ruling that Husband is to provide health and dental insurance for the children, and one-half of the counseling expenses. In all other respects the trial courts' order is affirmed. TRIAL COURT AFFIRMED IN PART, REVERSED IN PART; REMANDED TO TRIAL COURT TO MODIFY AWARD AND ENTER JUDGMENT AS HEREIN DETERMINED.

LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur.

HODGES, V.C.J., concurs specially.

OPALA, C.J., and KAUGER, J., concurs in part and dissents in part.

ALMA WILSON, J., dissents in part and concurs in result.

HODGES, Vice Chief Justice, concurring specially.

The primary issue in this appeal is whether, for purposes of property division in a divorce proceeding, a stockholder's interest in a medical corporation includes, as a separate asset, the goodwill of the corporation when the stockholder's interest in the corporation is controlled by an agreement and the value of the goodwill of the corporation can not be realized by either spouse other than through salary. Although I concur in the majority opinion, I write separately to address this issue.

Section 121 of title 43 of the Oklahoma Statutes provides the basis for property division in a divorce proceeding. It states:

As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof. . . .

Under this provision, only the property actually acquired by the parties is divisible.

The husband's interest in the corporation was determined by the stock agreement. Assuming that the corporation had a goodwill value separate from the value of the stock, by the terms in the agreement, that goodwill was not an asset of the husband. Like the husband, the wife was bound by that agreement as to the husband's interest in the corporation. She could not be awarded property that was never acquired by either party to the divorce or which the husband could never realize other than through salary.

Under the stock agreement, the husband did not acquire any goodwill in the corporation other than what was included in the $9,652.53, the amount for which he was required to sell his stock back to the corporation. Any goodwill interest in the corporation of the husband was divided when the wife was awarded one-half of the value of the stock. The trial court erred in considering the goodwill of the corporation as a separate factor in evaluating the husband's interest in the corporation.

Accordingly, I concur in the majority opinion holding that the goodwill value of the corporation should not have been considered as a discrete asset of the husband to be divided between the parties.

KAUGER, Justice, concurring in part and dissenting in part:

In *Travis v. Travis*, 795 P.2d 96, 100 (Okla.1990)—in which I did not participate—this Court held that the good will of a law practice owned by a sole practitioner was not a divisible asset. The majority ignores the Oklahoma statutes and skews its conclusion by relying on Webster's New Collegiate Dictionary to define good will. This is despite: 60 O.S.1991 § 315 which defines good will of a business as the expectation of continued public patronage;[1] 60 O.S.1991 § 2 which provides that the good will of a business is subject to ownership;[2] 60 O.S.1991 § 316 which recognizes that good will is transferable property;[3] 18 O.S.1991 § 1092 which authorizes corporate sale, lease, or exchange of goodwill;[4] and 54 O.S.1991 § 209, which allows partnerships to dispose of it.[5] The conclusion cannot be avoided that the division of good will is contemplated under these statutes. Additionally, the great weight of authority from other jurisdictions acknowledges that corporate goodwill is a property interest subject to division in a divorce proceeding.[6]

1. Title 60 O.S.1991 § 315 provides:
   "The good-will of a business is the expectation of continued public patronage, but it does not include a right to use the name of any person from whom it is acquired."

2. Title 60 O.S.1991 § 2 provides:
   "There may be ownership of all inanimate things which are capable of appropriation, or of manual delivery; of all domestic animals; of all obligations; of such products of labor or skill, as the composition of an author, the good will of a business, trade marks and signs, and of rights created or granted by statute."

3. Title 60 O.S.1991 § 316 provides:
   "The good-will of a business is property, transferable like any other."

4. Title 18 O.S.1991 § 1092 provides in pertinent part:
   "A. Every corporation, at any meeting of its board of directors or governing body, may sell, lease, or exchange all or substantially all of its property and assets, including its goodwill ..."

5. Title 54 O.S.1991 § 209 provides in pertinent part:
   "... (3) Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to:
   ... (b) Dispose of the goodwill of the business ..."

6. See, Annot., "Divorce & Separation: Goodwill in Law Practice as Property Subject to Distribution on Dissolution of Marriage," 79 A.L.R.4th 171 (1990); Annot., "Valuation of Goodwill in Medical or Dental Practice for Purposes of Divorce Court's Property Distribution," 78 A.L.R.4th 853 (1990); Annot., "Valuation of Goodwill in Law Practice for Purposes of Divorce Court's Property Distribution," 77 A.L.R.4th 683 (1990); Annot., "Divorce & Separation: Goodwill in Accounting Practice as Property Subject to Distribution on Dissolution of Marriage," 77 A.L.R.4th 645 (1990); Annot., "Divorce & Separation: Goodwill in Medical or Dental Practice as Property Subject to Distribution on Dissolution of Marriage," 76 A.L.R.4th 1025 (1990).

All that is left for division under the corporate agreement is the goodwill of the radiology practice. Oklahoma statutory law [7] and the majority rule [8] support its division.

In *Mitchell v. Mitchell*, 152 Ariz. 317, 732 P.2d 208, 211 (1987), the Arizona Supreme Court aptly described the confusion that exists in division of good will on divorce. Divorce ends the marriage. It does not terminate an ongoing business. Upon dissolution of a marriage, a professional practice goes automatically to the spouse licensed to practice it. The practitioner is not selling or liquidating the business. Effectively, a silent partner withdraws from an ongoing business. In order for that partner to receive fair compensation for his/her share, or his/her enforced retirement, the good will must be evaluated. Good will and pension rights acquired during the marriage are assets of the marriage even though their enjoyment may be deferred. The majority should accept the economic reality that the good will of a professional practice has value, and it should treat it as property upon dissolution of the marriage—regardless of the form of business.

Here, because of an artfully drafted contract provision, there will be no meaningful inquiry into the fair market value of the good will of the husband's professional practice. By drafting similar provisions, professional corporations may shield corporate partners, ensuring that their spouses never receive any renumeration from the established good will of an ongoing professional practice upon divorce. Recovery of the non-partner spouse will be blocked whatever the facts may show concerning that party's support leading to the establishment of the practice or during its ongoing operation. This will be the law— even though the wife's expert witness testified that: 1) buy-sell agreements were not intended to be used for valuations in divorce proceedings but rather when a corporate partner was leaving the corporation; and 2) the buy-sell agreement did not make provision for the evaluation of good will in any instance. Here, the wife is being bound by a document not intended to cover the facts presented—divorce, upon which her signature does not appear, and containing provisions for which she did not bargain.

Rather than follow the Oklahoma statutes and the mainstream of authority, the majority chose gratuitously to increase the amount of support alimony. Although the majority seeks to do equity, its failure to follow the law has not done the wife a favor. Despite the fact that her rights vested,[9] she may lose everything if she chooses to remarry or to live with someone of the opposite sex without benefit of marriage; and, should she die, her children have nothing.[10]

---

**7.** Title 60 O.S.1991 § 2, see note 2, supra; 60 O.S.1991 § 316, see note 3, supra; 18 O.S.1991 § 1092, see note 4, supra; 54 O.S.1991 § 209, see note 5, supra.

**8.** See, Annot., "Divorce & Separation: Goodwill in Law Practice as Property Subject to Distribution on Dissolution of Marriage," see. note 6, supra; Annot., "Valuation of Goodwill in Medical or Dental Practice for Purposes of Divorce Court's Property Distribution," see note 6, supra; Annot., "Valuation of Goodwill in Law Practice for Purposes of Divorce Court's Property Distribution," see note 6, supra; Annot., "Divorce & Separation: Goodwill in Accounting Practice as Property Subject to Distribution on Dissolution of Marriage," see note 6, supra; Annot., "Divorce & Separation: Goodwill in Medical or Dental Practice as Property Subject to Distribution on Dissolution of Marriage," see note 6, supra.

**9.** Property interests represented by a divorce decree's support alimony award are vested rights embodied in a judgment. They are constitutionally insulated from legislative interference by after-enacted legislation. *Messenger v. Messenger*, 827 P.2d 865 (Okla.1992).

**10.** *Nantz v. Nantz*, 749 P.2d 1137, 1140 (Okla.1988); 43 O.S.1991 § 134 provides in pertinent part:

"... B. The court shall also provide in the divorce decree that upon the death or remarriage of the recipient, the payments for support, if not already accrued, shall terminate....

D. The voluntary cohabitation of a former spouse with a member of the opposite sex shall be ground to modify provisions of a final judgment or order for alimony as support. If voluntary cohabitation is alleged in a motion to modify the payment of support, the court shall have jurisdiction to reduce or terminate future support payments upon proof of substantial change of circumstances of ei-

ALMA WILSON, Justice, dissenting in part and concurring in result:

The majority holds that the trial court erred in valuing *and* including as divisible marital property the good will of a professional medical corporation. This holding is ambiguous. I would hold that the good will of a physician's medical practice is an asset that may be included in the marital estate subject to an equitable division between the parties. I would further hold, that in this case the evidence does not support the monetary value assigned to the good will of Dr. Mocnik's physician practice and that in this case the stock purchase agreement which controls the amount Dr. Mocnik would receive for his stock, also controls the value of the good will asset for purposes of division of marital property.

The trial court included the good will of the appellant's medical practice within the marital estate, which must be equitably divided in the decree of divorce. The record does not reflect the precise method or formula by which the trial court determined the monetary value of the good will.

The purpose in examining the concept of good will is to determine the marital property. Title 43 O.S.1991, § 121 provides in pertinent part:

As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof.

In a clear case, if the parties in a divorce action had a business that was begun after the marriage, and both parties worked at that business, that business is a marital asset. If one of the parties were to be awarded the business, or if the business were to be ordered sold to third parties, the value of the business would be determined by the assets. The assets of the business may include more than the physical assets minus the financial liabilities; the assets may include good will.

The term is defined in our statutes as follows: "The good-will of a business is the expectation of continued public patronage, but it does not include a right to use the name of any person from whom it was acquired." 60 O.S.1991, § 315. The next section (§ 316) provides: "The good-will of a business is property, transferable like any other." As property, it may become an asset of the marriage. Under 43 O.S. 1991, § 121, the good will of a business could be included in the assets when determining the value of the business for purposes of division.[1]

The courts have not spoken with a uniform voice in addressing the question of the existence and value of good will in a professional context. *Hanson v. Hanson*, 738 S.W.2d 429, 433 (Mo.1987). A review of the cases listed in footnote 1 of *Travis v. Travis*, 795 P.2d 96, 97 (Okla.1990), reveals the confusion existing in the courts over

ther party to the divorce relating to need for support or ability to support. As used in this subsection, the term cohabitation means the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship not solemnized as a marriage according to law, or not necessarily meeting all the standards of a common-law marriage...."

1. In *Wall v. Chapman*, 84 Okl. 114, 202 P. 303 (1921), a dentist (Chapman) sold his tools, furniture, and equipment to another dentist (Wall) and signed a contract agreeing not to practice dentistry in Sulfur for five years. When Chapman breached his contract and was sued by Wall, the issue before the court was whether the contract was in restraint of trade and therefore void. This Court cited Section 979, Revised Laws 1910 (now found in amended form at 15 O.S.1991, § 218), which provided: "One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein." This Court upheld the contract on the ground that Chapman had sold the good will of his business. If a dentist may sell the good will of his business to another dentist, then that good will is an asset that may be judicially valued and divided as marital property.

this issue. The main cause of the confusion is identified in an article entitled "The Treatment of Professional Goodwill in Divorce Proceedings."[2] The article states that the concept of good will long used in accounting and economics is not the same as the term is now being used by the courts in appellate cases. It states that good will is an asset of a business; it is not personal to any individual.[3] What the courts have done in the professional context is to confuse the issue by attempting to put a value on the reputation of an individual as opposed to evaluating a business. Because all individuals, including those outside of professions, have reputations, the courts recognizing the supposed good will of individual lawyers, doctors, or dentists have created an asset based upon future earning ability, but these courts incorrectly label reputation as good will.

For example, in *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1, 9 (1983), the New Jersey court went into great detail concerning methods of setting the good will of a professional for the purposes of dividing marital assets. The court stated that one appropriate method of determining the value of good will of a law practice would be to fix the amount by which the attorney's earnings exceed that which would have been earned as an employee by a person with similar qualifications of education, experience and capability. If good will can be established by using such criteria, then any employee, whether or not a professional, has good will if he earns more than a person with similar qualifications of education, experience and capability. Under such circumstances, the term good will is inappropriate. The *Dugan* court is measuring future earning capacity, and as stated in *Travis*, 795 P.2d at 100, projected earnings can be considered in establishing support alimony, which unlike property division of good will, may be adjusted up-

ward or downward at a later date.[4] *Nantz v. Nantz*, 749 P.2d 1137 (Okla.1988).

These principles have application to the case at bar. From an accountant's point of view, Tulsa Radiology Associates, the corporation in which Dr. Mocnik is a stockholder, probably has good will value. Mrs. Mocnik's expert witness who testified concerning the good will value of the business found that the corporation had a non-compete agreement with radiologists at the hospital in Broken Arrow, Oklahoma. The Broken Arrow radiologists paid the corporation $300,000.00 for the agreement. So there is evidence that the corporation, the business itself, has a good will value. The other methods of figuring good will advanced by Mrs. Mocnik's expert were based upon a comparison of Dr. Mocnik's salary with other radiologists, in other words, his future earning capacity. Those methods are not valuations of good will, but are valuations of reputation. Since they measure future earning capacity, they are not properly considered as divisible marital assets.

Even though the corporation has a good will value, that asset is not an asset of Dr. Mocnik unless he has some method of appropriating the asset to himself other than his increased salary. Mrs. Mocnik's expert admitted that the values that he set were for the purpose of marital dissolution and that a different value would be set if Dr. Mocnik were considering retirement from the practice or selling the practice. The expert testified that the market for Dr. Mocnik's stock would be very limited since the stock could be owned only by a physician, who as a practical matter must be a radiologist acceptable to the corporation and to the hospitals at which the corporation's physician-employees practice. He also admitted that a good indicator of the value of the stock would be other sales of stock of the corporation in the same amount as Dr. Mocnik's stock. Dr. Moc-

---

2. Parkman, 18 Fam.L.Q. 213–23 (Summer 1984).

3. *Id.* at 214.

4. The holding in *Travis* was based on the fact that a law practice is unlike other professions in that it cannot be purchased by another seeking

to acquire an established law practice. A lawyer is not free to sell his files to a succeeding lawyer because such a sale would violate the Rules of Professional Conduct. See *Travis*, 795 P.2d at 100.

nik's own expert, who was the corporation's public accountant, testified that one of the physicians in the corporation was retiring and that his stock was being purchased by the corporation for exactly the price called for under the Stock Purchase Agreement, $9,652.53, without any payment for good will.

The price set by the Stock Purchase Agreement, Dr. Mocnik's portion of the discounted accounts receivable, and his portion of the non-competition agreement are assets that are certain and not speculative. These amounts, as stated by the majority opinion, are correctly considered as marital assets. But each case should be considered on its facts. *Wall v. Chapman*, 84 Okla. 114, 202 P. 303 (1921) recognized that a dentist who was a sole practitioner had sold the good will in his practice. The holding by the majority that the good will of Dr. Mocnik's physician's business did not become a marital asset, is in my view an incorrect legal conclusion. To this holding I must respectfully dissent. The evidence failed to show that Dr. Mocnik could realize any benefit from the good will of the medical corporation other than that provided through the Stock Purchase Agreement. The good will of a physician's business, accrued during the marriage, is a marital asset for the purposes of property division if the asset can be valued and sold. If the asset cannot be valued or sold, the good will is not a divisible marital asset. There is insufficient evidence to support a marital asset attributable to good will in Dr. Mocnik's corporation.

Accordingly, I dissent to the holding of the majority. I concur only in the result reached by the majority opinion.