2003 OK CIV APP 28

**Judith Ann SMITH, Plaintiff/Appellee,**

v.

**Stephen Michael SMITH, Defendant/Appellant.**

**No. 96,752.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 5, 2002.

Certiorari Denied March 4, 2003.

Laura Haag McConnell, Hartzog, Conger & Cason, Oklahoma City, OK, for Plaintiff/Appellee.

Donelle H. Ratheal, Oklahoma City, OK, for Defendant/Appellant.

1. The child is now past her 18th birthday. Father has not briefed any issue regarding visitation, which would nonetheless be moot.

Opinion by KENNETH L. BUETTNER, Judge.

¶1 Defendant/Appellant Stephen Michael Smith (Father) appeals from the trial court's order modifying Father's child support obligation. Plaintiff/Appellee Judith Ann Smith (Mother) sought an increase in child support payments from Father based on changes in the parties' incomes as well as the expenses of the minor child. The trial court increased Father's child support obligation from $460 per month to $4,300 per month. Father also appeals the trial court's order that he pay attorney fees and costs incurred by Mother in the modification proceedings. Because we find the evidence supports the trial court's decision to modify child support, we affirm. However, we find the trial court abused its discretion in setting the monthly child support obligation far beyond the amount prescribed by the child support guidelines. We therefore modify the amount ordered to be paid as child support in the trial court's modification order. We affirm the order that Father pay an award of attorney fees to Mother.

¶2 Mother and Father were married in 1981. Their only child was born August 11, 1984.[1] The parties were divorced in 1988, and the decree awarded custody to Mother, granted visitation to Father, and ordered Father to pay $460 per month as child support.[2] The decree had not been modified before Mother filed her motion to modify child support May 31, 2001, which led to this appeal.

¶3 In her motion to modify, Mother asserted that since the decree was entered, the parties' incomes had changed substantially and that a modification of support was warranted by the increased income. Mother also averred that the needs of the minor child had changed, in that the child was enrolled in private school, and that such expense should be included in the child support calculation.

¶4 Father admitted that the parties' incomes had changed, but he asserted that he

2. The child support computation attached to the divorce decree indicated that at the time of the 1988 divorce, Father's monthly income was $2,834 and Mother's monthly income was $1,500.

had been providing more support than the amount ordered in the decree. Father argued that he had paid for the child's private school tuition and that such amount should be credited toward his child support obligation in "whatever (amount) this Court may determine to be appropriate under the circumstances." Father also asked that any modification of child support include a credit to him for transportation costs, as well as a pro-rated waiver of child support paid by him during the child's summer visitation with Father.

¶ 5 Trial was held July 11, 2001. The trial court entered its order modifying child support July 31, 2001. In its order, the trial court noted that the parties had stipulated that a substantial and material change of circumstances had occurred since the entry of the decree, which justified a modification of child support. The court also noted that the parties' combined incomes exceeded $15,000 per month, requiring the court to determine child support pursuant to 43 O.S.Supp.2000 § 119(B).

¶ 6 The court ordered Father to pay $4,300 [3] per month as child support beginning June 1, 2001, "until the minor child reaches the age of 18 or through the age of 18, so long as the child is regularly and continuously attending high school." [4] The court ordered Mother to maintain the child on her employer-sponsored health, dental and vision insurance, but ordered Father to pay 88% of the cost of such insurance. Father was also ordered to pay 88% of any uninsured health costs of the child. The child support computation was attached to the order.

¶ 7 Modification of child support obligations is a matter addressed to the sound discretion of the trial court. *Riedel v. Riedel*, 1992 OK CIV APP 166, 844 P.2d 184, 187. The trial court's decision in a modifica-

tion proceeding will not be reversed without a showing of an abuse of the trial court's discretion, or that the determination of the support amount is against the clear weight of the evidence. *Id.*

¶ 8 Father asserts that the instant case involves a question of first impression. Father alleges that the trial court in this modification proceeding extended the pre-divorce standard of living consideration to the determination of modified support. Father argues that Mother asserted that the minor child was deprived because Father's income had increased dramatically. Father argues that actually the child enjoyed a very good lifestyle before the modification, due to Mother's income and due to Father's voluntary payment of double his original $460 child support obligation as well as some other expenses of the child. Father argues the trial court erred in modifying child support to an amount above the "statutory cap."

¶ 9 Father notes that 43 O.S.Supp.2000 § 119(B) provides that in the event the parents' combined gross monthly income exceeds $15,000, the child support shall be the amount due under the guidelines for income of $15,000 (the amount at which the guidelines are capped) "and an additional amount determined by the court." The guidelines in effect at the time of the modification proceedings provided for the total monthly child support for one child of parents with combined monthly income of $15,000 to be $1,372, which is 9.15% of $15,000.

¶ 10 The child support computation attached to the order modifying child support lists Father's monthly income as $46,015 [5] and Mother's monthly income as $6,419. Accordingly, the combined gross monthly income of the parties was $52,434. It is clear from the child support computation attached to the modification order that the trial court

---

3. This amount represented 88% of the total child support obligation determined by the trial court, plus 88% of the health insurance premium for the child. The trial court determined Father's proportional share of the child support amount to be 88%.

4. This provision is consistent with the dictate of 43 O.S.Supp.2000 § 112(E).

5. Which amounts to an annual income of $552,180. The record contains a letter from Father's Colorado counsel stating that his 2000 income was $763,562.76 and his 2001 income was $540,000 (which was comprised of $250,000 annual salary, $40,000 cost of living adjustment, and $250,000 bonus). We disagree with Father's contention that the trial court erred in determining his monthly income.

multiplied that amount by 9.15% to calculate that the child support amount would be $4,797 under the guidelines. Father's percentage share of 88% of $4,797 would be $4,220. To that amount, the trial court added 88% of the child's monthly health insurance premium, $78, and rounded that number to $4,300, which was the amount of child support Father was ordered to pay in the modification order.

¶11 Father urges that the trial court should not have simply extrapolated the amount due under the guidelines for the parties' incomes in this case. We note one commentary which urges that a simple mathematical extrapolation is not a well-received method of determining the support amount in cases involving parents with very high incomes. See Hogan, *Child Support in High Income Cases*, 17 J. Am. Acad. Matrim. Law 349, 351 (2001). That article noted that at least some consideration should be given to the child's actual needs, which may include consideration of the child's lifestyle. *Id.*

■ ¶12 A review of the child support table found at 43 O.S.Supp.2000 § 119(A) reveals that as the parents' combined gross income increases, the proportion of that income which is designated for child support decreases. This is due in part to the fact that a child's needs, both essential and lifestyle-related, do not inherently increase regardless of the amount of income. This has been referred to as the "three pony rule," which is that no child needs three ponies, no matter that the parents might easily afford to provide them. 17 J. Am. Acad. Matrim. Law 349, 351. That article noted that, in the case of parents with very high incomes, determining child support on the basis of a simple percentage of income used to determine child support at a lower income level may result in such an exorbitant child support award that it effectively results in a redistribution of the wealthy parent's estate, rather than simply providing support for the child consistent with the child's reasonable needs. *Id.*

¶13 At least two Oklahoma cases have addressed deviating from the child support guidelines as a result of the parents' combined gross monthly income exceeding the guidelines cap.[6] *Archer v. Archer*, 1991 OK CIV APP 28, 813 P.2d 1059, involved an appeal from the original decree of divorce. The evidence in *Archer* was that the husband's income was at least $18,500 per month. *Id.* at 1060. The trial court determined that the high income was an extraordinary circumstance which excused compliance with the child support guidelines. *Id.* The trial court ordered the husband to pay $900 per month per child, for a total monthly obligation of $2,700. In his appeal, the husband argued that the trial court could only exceed the maximum amount provided by the guidelines if "exceptional needs" were shown. *Id.* The *Archer* court explained that child support in high income cases must be determined on a case by case basis, with the minimum support award being the capped amount under the guidelines. *Id.* at 1061. The court explained that the trial court is not limited to considering the child's bare bone needs, but may also consider the payor parent's affluent lifestyle in determining the proper amount of support. *Id.* The court noted that the husband's share of the total child support would be 80% and that, based on the amount the husband was ordered to pay, the total child support amount would have been $3,375. *Id.* at 1062. The court noted that the evidence presented showed that the children had a monthly need of $3,669, and therefore concluded that the amount awarded was not against the clear weight of the evidence. *Id.*

¶14 A year later the Oklahoma Supreme Court addressed this issue in the case of *Mocnik v. Mocnik*, 1992 OK 99, 838 P.2d 500. In *Mocnik*, the trial court ordered the husband to pay child support of $2,000 per month, while the wife presented evidence that the children's expenses were over $4,700 per month. *Id.* at 507. On appeal, the court noted that the parties' joint monthly income

6. *Casey v. Casey*, 1993 OK CIV APP 129, 860 P.2d 807, also involved income above the limits of the guidelines, but the opinion simply finds the amount of child support ordered not to be an abuse of discretion, with scant explanation. *Ford v. Ford*, 1992 OK CIV APP 123, 840 P.2d 36, also offers little in the way of analysis.

was $19,543. *Id.* The court noted that the top amount of child support in the guidelines equaled 13.52% of income and the court multiplied that percentage by $19,543 and concluded that a proper child support amount would be $2,642.21, and that the husband owed 91% of that amount, or $2,404.41. *Id.* The court approved the trial court's reduced award of $2,000 per month based on the extensive visitation awarded to the husband. *Id.* The court affirmed the amount awarded as child support. *Id.*

¶ 15 However, the *Mocnik* court's method of multiplying the parties' monthly income by the percentage of income used at the top bracket of the guidelines fails to consider the methodology of the guidelines. As explained above, as income increases, the percentage of income directed to child support decreases. A more accurate method of calculating child support for income amounts beyond the guidelines chart is to consider the decreasing percentage of income for each bracket as income rises.[7] This would recognize that at some point, child support for each additional $1000 in income approaches zero. In this case, even if the percentage for the highest bracket of income (4%) is applied to income exceeding $15,000 per month, the result is total support of $2,869 per month.[8] Absent other considerations, the trial court would have been justified in using this amount as an extrapolation of the guidelines.

¶ 16 Mother submitted an exhibit detailing the child's monthly expenses which totaled $3,355.90 per month.[9] A child's reasonable living expenses could justify a child

support award in excess of an extrapolation for income exceeding the guidelines. However, we find it was an abuse of the trial court's discretion to award child support in an amount greater than even the liberal amount of expenses of the child asserted by Mother. We therefore modify the child support calculations.[10] Using the living expenses submitted by Mother, $3,355.90, Father's 88% share of that amount is $2,953.19 per month.[11] Any greater amount would simply be a transfer of wealth from Father to Mother.

¶ 17 We now address Father's appeal from the order awarding attorney fees and costs to Mother. Mother filed her application for attorney fees August 7, 2001. Mother requested an award of costs and fees in the amount of $5,390.25. Father objected to Mother's application and asked that the court order the parties to each pay their own counsel fees. The trial court issued its order September 26, 2001, in which it ordered Father to pay $4,096 directly to counsel for Mother as an award of attorney fees and costs. Father asserts that due to the many errors he alleges the trial court made, it was an abuse of the trial court's discretion to order Father to pay attorney fees to Mother.

¶ 18 Title 43 O.S.Supp.1997 § 110(D) provides that a trial court has discretion in a modification proceeding to order one party to pay the counsel fees of the other. An award of fees is not based on prevailing party status or financial status, but must be based on a judicial balancing of the equities. *Abbott v. Abbott,* 2001 OK 31, 25 P.3d 291, 294. We

---

7. For example, the percentage for the first $1,000 in income is 20% ($200 in support for $1,000 in income). However, the percentage directed to support for the 15th thousand in income is only 4% ($1,372 support for $15,000 in income, minus $1,332 support for $14,000 in income equals $50 divided by $1,000 = 4%).

8. $2,869 is derived as follows: We start with $1,372 for $15,000 monthly income. The parties' combined monthly income, $52,434, minus the $15,000 guidelines maximum, equals $37,434. That amount times 4% (percentage of the $15,000 bracket) equals $1,497, which added to $1,372 equals $2,869.

9. We find it unnecessary to include all the items on Mother's exhibit, but the expenses listed in-

cluded attributing to the child one-third of many of Mother's bills, including the mortgage, pool loan, pool closing costs, pool cover, utilities, and household expenses. The list also included Mother's entire car payment (because Mother gave her old car to the child), as well as the child's private schooling, summer camp, cell phone, travel expenses, monthly allowance, and travel costs.

10. Where the trial court's child support award is not just and equitable, the appellate court will render a proper judgment. *Thrash v. Thrash,* 1991 OK 32, 809 P.2d 665, 668.

11. In his brief on appeal, Father urges that his monthly child support obligation should be $2,953.20.

note the evidence showing Father's income was approximately 20 times higher than it was at the time of the original decree. Yet Father continued to pay only twice his support obligation and none of that money went to Mother, but instead was paid directly to the child's private school for her tuition. Mother presented testimony that Father threatened to seek custody if Mother tried to modify child support. We find no abuse of discretion in the trial court's decision to award Mother part of her attorney fees.

¶ 19 The trial court correctly determined that modification of child support was warranted in this case. However, we reduce the amount of Father's monthly child support obligation from $4,300 per month to $2,953.00 per month. The modification order is affirmed in all other respects.

AFFIRMED AS MODIFIED.

JOPLIN, V.C.J., and JONES, J., concur.